**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VERTICAL BRIDGE REIT, LLC, | Case No. 2:23-cv-1017-WSH |
| Plaintiff, | **VERTICAL BRIDGE REIT, LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| EVEREST INFRASTRUCTURE PARTNERS, INC.; EIP HOLDINGS II, LLC, | Judge W. Scott Hardy |
| Defendants. | |

**PLAINTIFF VERTICAL BRIDGE REIT, LLC'S BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................ 1

RESPONSE TO EVEREST'S STATEMENT OF FACTS ........................................ 2

LEGAL STANDARD ............................................................................................... 4

ARGUMENT ............................................................................................................. 5

    I.      VB's Trade Secret Claims Are Well-Pled. ........................................... 5

    II.     VB's Lanham Act Claim is Well-Pled ................................................. 18

    III.    VB's Remaining Claims Do Not "Rise and Fall" With Its Trade Secret
           Misappropriation and Lanham Act Claims. ........................................ 23

    IV.    VB Has Standing, is the Real Party in Interest, and No Further Parties
           are Required. ...................................................................................... 24

CONCLUSION ......................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Fluid Sys., Inc. v. Huber*,
 28 F. Supp.3d 306 (M.D. Pa. 2014) ..........................................................................17, 18, 24

*Estate of Alvin v. Herman*,
 No. 2:22-cv-00372-MJH, 2022 WL 2343307 (W.D. Pa. Jun. 29, 2022).............................5, 6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..........................................................................................................5, 19

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)..............................................................................................................19

*Callery v. HOP Energy*,
 No. 20-3652, 2023 WL 2601178 (E.D. Pa. Mar. 22, 2023) .............................................16, 17

*Carpenter Tech. Corp. v. Allegheny Techs., Inc.*,
 646 F. Supp.2d 726 (E.D. Pa. 2009) .....................................................................................22

*Center Pointe Sleep Assocs., LLC v. Panian*,
 No. 08-1168, 2009 WL 789979 (W.D. Pa. Mar. 18, 2009) .......................................................8

*Cichonke v. Bristol Twp.*,
 No. 14-4243, 2015 WL 1345439 (E.D. Pa. Mar. 25, 2015) ......................................................4

*Connelly v. Lane Const. Corp.*,
 809 F.3d 780 (3d Cir. 2016)....................................................................................................5

*DeCurtis LLC v. Carnival Corp.*,
 No. 20-22945, 2021 WL 1968327 (S.D. Fla. Jan. 6, 2021)..........................................7, 15, 16

*Disabled in Action v. Southeastern PA Trans. Authority*,
 635 F.3d 87 (3d Cir. 2011).................................................................................................6, 25

*Etimine USA Inc. v. Yazici*,
 No. 2:20-cv-713, 2021 WL 1131256 (W.D. Pa. Mar. 24, 2021) ...................................... *passim*

*FMC Corp. v. Summit Agro USA, LLC*,
 No. CV 14-51-LPS, 2014 WL 6627727 (D. Del. Nov. 14, 2014) ....................................19, 20

*General Refractories Co. v. First State Ins. Co.*,
 500 F.3d 306 (3d Cir. 2007).........................................................................................5, 10, 19

*Hedges v. U.S.*,
     404 F.3d 744 (3d Cir. 2005)................................................................................5

*Intellisoft, Ltd. v. Acer Am. Corp.*,
     955 F.3d 927 (Fed. Cir. 2020)...........................................................................17

*Joseph v. Algemene Bank Nederland, N.V.*,
     592 F. Supp. 141 (W.D. Pa. 1984).................................................................24, 25

*Liberty Mutual Ins. Co. v. Gemma*,
     301 F. Supp.3d 523 (W.D. Pa. 2018)............................................................23, 24

*Long v. Holtry*,
     673 F. Supp.2d 341 (M.D. Pa. 2022).............................................................4, 10

*Mallet & Co., Inc. v. Lacayo*,
     16 F.4th 364 (3d Cir. 2021) ...............................................................................7

*Max Daetwyler. Max Daetwyler Corp. v. Input Graphics, Inc.*,
     545 F. Supp. 165 (E.D. Pa. 1982) .................................................................18, 19

*Morozin v. Johnson*,
     No. Civ.A. 11-2653, 2011 WL 587146 (E.D. Pa. Nov. 18, 2011).........................16

*Nami v. Fauver*,
     82 F.3d 63 (3d Cir. 1996)...................................................................................4

*Oakwood Labs, LLC v. Thanoo*,
     999 F.3d 892 (3d Cir. 2021)...............................................................................8

*Pennfield Precision, Inc. v. EF Precision, Inc.*,
     2000 WL 1201381 (E.D. Pa. Aug. 15, 2000) ....................................................4, 8

*Peterson v. Johnston & Rhodes Bluestone, Co.*,
     No. 3:18-cv-2222, 2019 WL 3202166, at *2 (M.D. Pa. Jul. 16, 2019) ..................24

*Phillips v. County of Allegheny*,
     515 F.3d 224 (3d Cir. 2008)...............................................................................4

*Project Development Grp., Inc. v. O.H. Materials Corp.*,
     766 F.Supp. 1348 (W.D. Pa. 1991)....................................................................12

*Reckitt Benckiser Inc., et al. v. Tris Pharma, Inc., et al.*,
     2011 WL 773034 (3d Cir. Feb. 28, 2011)............................................................8

*Registered Agent Solutions, Inc. v. Corp. Serv. Co.*,
     No. 21-cv-786, 2022 WL 911253 (D. Del. Mar. 28, 2022).................................18, 20

*Rycon Specialty Foods, Inc. v. Wellshire Farms, Inc.*,
  No. 1:09-cv-2092, 2011 WL 1988016 (M.D. Pa. May 23, 2011) ....................................11, 12

*Shure Inc. v. Clearone, Inc.*,
  2020 WL 2839294 (D. Del. June 1, 2020)............................................................18, 19, 20, 22

*Swift Bros. v. Swift & Sons, Inc.*,
  921 F. Supp. 267 (E.D. Pa. 1995) ...........................................................................................15

*TriStar Investors, Inc. v. American Tower Corp.*,
  No. 3:12-cv-0499-M, 2014 WL 1327663 (N.D. Tex. Apr. 3, 2014) ............................. *passim*

*Tungsten Heavy Powder and Parts, Inc. v. Global Tungsten & Powders Corp.*,
  No. 4:17-cv-01948, 2018 WL 3304550, at *3 (M.D. Pa. Jul. 5, 2018) ...................................24

*Valley Forge Military Academy Found. v. Valley Forge Old Guard, Inc.*,
  24 F.Supp.3d 451 (E.D. Pa. 2014) ...................................................................................19, 23

## Statutes

12 Pa. Cons. Stat. Ann. § 5302 ..............................................................................14, 15, 17

18 U.S.C.A. § 1839.................................................................................................6, 13, 14, 15

18 U.S.C.A. § 1839(3) ..............................................................................................................11

18 U.S.C.A. § 1839(4) .......................................................................................................17, 18

Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) ...................................................1, 2, 4, 5

Federal Rules of Civil Procedure Rule 8 ...............................................................................19

Federal Rules of Civil Procedure Rule 9 ...........................................................................18, 19

Federal Rules of Civil Procedure Rule 12 .............................................................................2, 3

Federal Rules of Civil Procedure Rule 19 ...........................................................................6, 25

Federal Rules of Civil Procedure Rule 19(a)(1)(B) ................................................................25

Lanham Act.......................................................................................................................... *passim*

## Other Authorities

6 Fed. Prac. & Proc. Civ. § 1543 ...........................................................................................25

Plaintiff Vertical Bridge REIT, LLC ("VB"), by and through its undersigned counsel—K&L Gates, LLP—hereby respectfully submits this Brief in Opposition to Defendants Everest Infrastructure Partners, Inc. and EIP Holdings II, LLC's (collectively, "Everest") Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7) (the "Motion").

## **INTRODUCTION**

In the Brief in support of its Motion ("Br."), Everest concedes that it targets and approaches VB's landlords (the "Landlords"), induces the Landlords to share with Everest their confidential VB ground leases (the "VB Contracts), and then uses the information in those VB Contracts to acquire property interests at VB's expense and to Everest's advantage. This concession is in aid of an attempt to execute an early legal judo move:  Everest adopts a "so what" position, and argues that none of this behavior is illegal because no misappropriated trade secrets are actually involved, the statements Everest makes to VB's Landlords are mere puffery or predictions about the future, and everybody else in the industry behaves just like Everest. Everest even attaches to its Brief eight leases that correspond to eight sites where Everest has acquired a property interest at VB's expense through the behavior described above, and says (functionally) – look, here are the only sites where we have done the thing they say we did, and there's nothing to see here!

The attempted judo move fails, however, because in order to argue that no misappropriated trade secrets are issue, or that its misrepresentations to VB's Landlords do not violate the Lanham Act, Everest has to (A) ignore the factual allegations in VB's Complaint; (B) introduce its own factual allegations that contradict the factual allegations in VB's Complaint and that are not supported by anything other than Everest counsel's say-so; and (C) grossly mischaracterize applicable case law while relying on misleadingly cherry-picked citations to either inapposite case law or case law that, when read faithfully, supports VB's position.

When the proper Rule 12 standard is applied to the factual allegations in VB's Complaint in conjunction with the legal elements for VB's causes of action, the text of the relevant statutes, and properly characterized Third Circuit case law, Everest's Brief is reduced to nothing more than an admission that Everest is in fact doing what VB has alleged, combined with eight examples (but by no means the only eight) of sites where Everest's scheme has been successful thus far.

For all these reasons, as explained in more detail below, and because Everest has failed to carry its high burden under Rule 12, Everest's Motion should be denied.

## <u>RESPONSE TO EVEREST'S STATEMENT OF FACTS</u>

As alleged in VB's Complaint, Everest has engaged in an improper scheme to unlawfully inflate its market share at VB's expense through trade secret misappropriation, false advertising, tortious interference with contract, and unfair competition. *See* Dkt. No. 1 ("DE 1") ¶ 3.[1] Unable to successfully seek dismissal based on the facts as pled in VB's Complaint, Everest both ignores and misconstrues VB's allegations, thereby turning the Rule 12(b)(6) standard on its head, (*see infra* pp. 4–5). Specifically, Everest invites the Court to adopt and take as true ***Everest's*** factual recitation—which it improperly introduces in its Motion and which has no basis in VB's Complaint—while assuming that VB's allegations (and the reasonable inferences that stem therefrom) are false.

---

[1] Notably, this is not the first time Everest's principals have engaged in this scheme. Certain Everest principals previously owned and operated TriStar Investors, Inc. ("TriStar"). *See* DE 1 ¶ 4. TriStar was sued by American Tower Company ("ATC")—the largest telecommunications infrastructure company in the United States—for similar unlawful conduct, including, *inter alia*, misappropriation of trade secrets and Lanham Act violations. *See id.* ¶ 4 (citing *TriStar Investors, Inc. v. American Tower Corp.*, No. 3:12-cv-0499-M, 2014 WL 1327663 (N.D. Tex. Apr. 3, 2014) (the "TriStar Litigation")). The court initially declined to dispose of claims under Rule 12(b)(6) until "after the factual record [was] further developed," and subsequently granted in part TriStar's motion for summary judgment following discovery. *See* TriStar Litigation, at DE 77, 321. TriStar ceased operations after that litigation concluded, and "Everest" emerged shortly thereafter. DE 1 ¶ 5.

What follows is a point-by-point rebuttal of the "facts" on which Everest relies for its arguments that are squarely contradicted by the only factual allegations that courts may consider under Rule 12: those found in VB's Complaint.

- Everest characterizes the trade secrets at issue as nothing more than the amount of rent as stated in the VB Contracts, and claims that VB has not alleged that Everest has misappropriated the formula that it uses to set its pricing structure. *See* Br. at 1, 5. In fact, VB's Complaint alleges both. Specifically, VB alleges that the trade secrets at issue are both VB's "***confidential formula*** to set the pricing terms and [VB's] ***pricing structure*** (including the timing and amounts of escalators)," as well as the pricing terms themselves. *Compare* Br. at 5, *with* DE 1 ¶ 30 (emphasis added), ¶¶ 36–37 ("Pricing information, including escalator amounts and timing, is jealously guarded by industry participants to the fullest extent of the law.").

- Everest asserts that VB has not alleged that Everest has actually broken its promises to Landlords *yet*. Br. at 7. In fact, VB alleges that Everest's promises are such that Everest ***never intends to keep them in the first place***, and in fact knows the promises are deceptive at the time they are made. DE 1 ¶¶ 38, 43, 51.

- Everest accuses VB of a contradiction when VB describes its process of renewing VB Contracts with its Landlords. Everest's allegation of a contradiction stems from a misconstrual of VB's Complaint: VB frequently renews its VB Contracts with Landlords as a matter of general practice, but would typically not renew any VB Contract after expiration once Everest acquires an interest in the site. *Id*. ¶¶ 26, 51. There is no contradiction between these two allegations.

- Everest characterizes legitimate tower aggregators' practice of submitting offers based on their research, analysis, and due diligence as simply "cross[ing] [their] fingers" and "hoping that the landowner negotiated a 'market' deal with [VB]." Br. at 5. Putting aside the mocking tone, the allegation is based on nothing other than Everest counsel's say-so, and is flatly contradicted by multiple allegations in VB's Complaint. Specifically, VB alleges that legitimate tower aggregators craft offers to landlords based on their own due diligence, including utilizing a market-determined multiple and estimating market rent based on their independent research and analysis. DE 1 ¶¶ 32–33. Moreover, in the *TriStar* case, ATC drew the exact same contrast that VB draws between legitimate tower aggregators' practices and TriStar's practices. *See TriStar Investors, Inc. v. American Tower Corp.*, No. 3:12-cv-0499-M, 2014 WL 1327663 (N.D. Tex. Apr. 3, 2014); TriStar/ATC Litigation, at DE 9.

- Everest asserts that there are only eight VB sites where Everest has obtained an interest. No support of any kind is offered for this assertion. Even if this assertion were true, it would be of no help to Everest, since it would shed no light on the number of sites Everest has targeted in the past unsuccessfully (*e.g.* sites where

Everest successfully misappropriated VB's trade secrets but was unable to secure a property interest) or how many sites Everest is currently targeting but has not yet closed. Most importantly, for purposes of Everest's Motion, the allegation in VB's Complaint that Everest has targeted all VB Contracts that are "soon to be expiring" (DE ¶¶ 34–35)—and not just Everest's cherry-picked eight—must be taken as true.[2]

## LEGAL STANDARD

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pled factual allegations and reasonable inferences that stem therefrom as true and view them in the light *most favorable to a plaintiff, resolving all doubts in the non-moving party's favor*. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228, 228 (3d Cir. 2008) ("The District Court . . . was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]"). In considering a 12(b)(6) motion, courts "do not inquire whether the plaintiff[ ] will ultimately prevail, only whether [it is] entitled to offer evidence to support [its] claims." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996); *see also Phillips*, 515 F.3d at 246. None of Everest's newly alleged facts can be considered at this juncture, especially where those facts contradict VB's well-pled allegations. *See Cichonke v. Bristol Twp.*, No. 14-4243, 2015 WL 1345439, at *13 n.19 (E.D. Pa. Mar. 25, 2015) ("At the motion to dismiss phase, Defendants' unsupported assertions cannot contradict Plaintiff's allegations in the Amended Complaint."); *Long v. Holtry*, 673 F. Supp.2d 341, 352 (M.D. Pa. 2022) ("[I]n deciding a motion to dismiss, the court is not here to weigh the evidence; instead, the court must take Plaintiffs' well-pled facts as true.").

Notably, the defendant "bears the burden of showing that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744 (3d Cir. 2005). A motion to dismiss must be denied where—as

---

[2] VB is under no obligation to identify with specificity every single such site at the pleading stage. *See Pennfield Precision, Inc. v. EF Precision, Inc.*, 2000 WL 1201381 (E.D. Pa. Aug. 15, 2000).

here—a plaintiff states a claim that is "plausible on its face" and pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678 (2009); *see also Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (noting that a complaint need only allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."). "The 'plausibility' standard required for a complaint to survive a motion to dismiss is not akin to a 'probability' requirement but asks for more than sheer 'possibility.'" *Etimine USA Inc. v. Yazici*, No. 2:20-cv-713, 2021 WL 1131256, at *3 (W.D. Pa. Mar. 24, 2021). Here, VB's allegations are unquestionably plausible on their face because similar allegations were leveled against TriStar – a company that engaged in the same scheme as Everest's that was owned and run by some of the same people who own and run Everest – in the *TriStar* litigation, and those claims survived (in part) summary judgment. *See TriStar Investors, Inc. v. American Tower Corp.*, 2014 WL 1327663; TriStar Litigation, at DE 9.

Similarly, in reviewing a motion to dismiss under Rule 12(b)(7), the court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party."[3] *See Estate of Alvin v. Herman*, No. 2:22-cv-00372-MJH, 2022 WL 2343307, at *4 (W.D. Pa. Jun. 29, 2022). The "[defendant] bears the burden of showing why an absent party should be joined under Rule 19." *Disabled in Action v. Southeastern PA Trans. Authority*, 635 F.3d 87, 96 (3d Cir. 2011); *see also Herman*, 2022 WL 2343307, at *4.

## ARGUMENT

**I.     VB's Trade Secret Claims Are Well-Pled.**

In an attempt to overcome the high standard for a motion to dismiss, Everest

---

[3] Everest fails to include the applicable standard for a motion to dismiss under Rule 12(b)(7). As such, VB recites the standard herein.

mischaracterizes VB's allegations, relies on baseless factual assertions at odds with the allegations in VB's Complaint, and—on several occasions—misrepresents the law. As detailed below, Everest's arguments defy the basic principles of trade secret law and do not support dismissal of VB's well-pled Complaint.

Tellingly, nowhere in its Motion does Everest set forth the baseline requirements for trade secret protection under the Defend Trade Secrets Act ("DTSA") and Pennsylvania Uniform Trade Secrets Act ("PUTSA"). The reason for this omission is clear: VB has clearly met each of the statutory requirements. Under the DTSA, the term "trade secret" is defined (in relevant part) as follows:

> *[A]ll forms and types of financial, business,* scientific, technical, *economic*, or engineering *information*, . . . if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information . . . .

18 U.S.C.A. § 1839 (emphasis added).[4]

As explained more fully below, VB has sufficiently alleged that its pricing and price structure information is a "trade secret" under the plain language of both statutes.

### A.    VB Sufficiently Identified The Trade Secrets At Issue.

Everest argues that VB's Complaint must be dismissed because it cannot identify the trade

---

[4] The PUTSA protects the same type of information as that protected by the DTSA. *See Etimine*, 2021 WL 1131256, at *4 ("Although DTSA and PUTSA use different wording to define a trade secret, both protect the same type of information.").

secrets at issue unless VB identifies the specific terms in specific contracts that are trade secrets. *See* Br. at 12. However, this argument rests on a distortion of the trade secrets at issue. VB clearly alleged its trade secrets sought to be protected: its "***confidential formula*** to set the pricing terms and pricing structure" of the VB Contracts, as well as the rent terms, escalators, and the timing and amount of such escalators. DE 1 ¶ 30, ¶¶ 36-37 (emphasis added). Thus, the trade secrets at issue are VB's formula and specific rent/escalation provisions, evidenced in VB's Contracts nationwide.

VB is not aware of any case law—and Everest does not cite to any such case law itself[5]—that requires a plaintiff to identify every contract that contains or reflects its trade secret information at the pleadings stage. All that is required is that "the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Oakwood Labs, LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (reversing 12(b)(6) dismissal and explaining that "a

---

[5] Everest cites to two decisions, *Mallet & Co., Inc. v. Lacayo*, 16 F.4th 364 (3d Cir. 2021) and *DeCurtis LLC v. Carnival Corp.*, No. 20-22945, 2021 WL 1968327 (S.D. Fla. Jan. 6, 2021), for the proposition that VB must "allege *which* terms in *which* contracts are protected trade secrets." Br. at 12. Both decisions, however, are wholly inapposite. And to the extent *DeCurtis* is relevant, it supports VB's position. In *Mallet*, the Third Circuit dissolved a preliminary injunction and remanded the case to the trial court for further clarification in the preliminary injunction order on what specific trade secrets were at issue. Specifically, the Court held that "Because the ***District Court did not identify*** with specificity the information it found to be Mallet's trade secrets, we are not in a position to make an informed decision as to whether Mallet is likely to prevail on its trade secret claims." 16 F.4th at 379. Similarly, in *DeCurtis*, the **Southern District of Florida** dismissed plaintiff's allegations that its "financial, business, scientific, technical, economic, and engineering information" was trade secret-protected for failing to sufficiently identify the trade secrets at issue. 2021 WL 1968327, at *4-5. By contrast, here, VB has not pointed to "broad categories of information," but has specifically identified its pricing terms and pricing formula as the trade secrets at issue. Thus, VB has pled "sufficient facts to . . . give [Everest] notice of the [trade secrets alleged]." *See id.* at *5. Notably, *DeCurtis* is in line with the Third Circuit case law cited in n. 6 *infra*.

plaintiff need not 'spell out the details of the trade secret to avoid' dismissal").[6]

VB has more than satisfied this standard. Moreover, the sufficiency of VB's allegations is evidenced by the fact that Everest has identified (at least some) of VB's alleged trade secrets at issue by impermissibly attaching eight leases to its Motion. Because Everest was able to identify at least these eight leases containing trade secret information (and elsewhere in its Motion it acknowledges that VB is seeking to protect its rent terms, escalation terms, and formula used to determine those, *see* Sec. II.C, E *infra*), it is clear that Everest is able to "ascertain at least the boundaries within which the secret lies." *See Oakwood Labs,* 999 F.3d at 905. Additionally, the trade secrets at issue here constitute exactly the same type of information that was issue in the *TriStar* case, which survived both Rule 12 and Rule 56 motions practice. *See* TriStar Litigation, at DE 77, 321. Everest, which is owned and controlled by some of the same people who owned and controlled TriStar and who were counterclaim defendants in TriStar, is therefore surely able to "ascertain the boundaries" of the trade secrets at issue here.

### B.      VB's Trade Secret Misappropriation Claim Is Well-Pled.

Once this Court reviews the controlling statutes and Third Circuit case law discussed *supra*, it will become clear that the rental amount, escalator amounts, escalator timing, and the formula that this information reflects are all protected trade secrets. The next question is whether VB has sufficiently alleged misappropriation of these trade secrets, and here, Everest's own Brief answers the question definitively: Everest has conceded that it targets VB's Landlords, induces them to share VB Contracts, and that it appropriates through this process VB's pricing information,

---

[6] *See also Etimine*, 2021 WL 1131256, at *5; *Center Pointe Sleep Assocs., LLC v. Panian*, No. 08-1168, 2009 WL 789979, at *3 (W.D. Pa. Mar. 18, 2009) (same); *see also Pennfield Precision, Inc.*, 2000 WL 1201381 ("[C]ourts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secret.").

including monthly rent, escalators, and timing of escalators. Since all of this information constitutes protectable trade secrets, Everest's concession means that it has admitted misappropriated for purposes of its Motion. *See* Br. at Sec. I.A; *see also* Exs. 1–8 (demonstrating that Everest has in fact misappropriated VB's trade secrets, since it is in possession of leases containing VB's trade secrets that it appropriated without permission from VB, including two leases – Exs. 7–8 – that have express confidentiality provisions).

Now, Everest is aware of what it is doing here – this is where Everest attempts its judo move. While conceding that it induces Landlords to share VB's confidential pricing information, Everest argues that such misappropriation is excusable because it is "simply not plausible" that others in the industry could conduct business without such misappropriation. Br. at 11. The argument relies on a factual assertion—for which Everest provides no support—that is flatly contradicted by the factual allegations in VB's Complaint, and which therefore has to be rejected at the Rule 12 stage. *See* DE 1 ¶ 33.

As VB has alleged in its Complaint (and as ATC – the country's largest tower company – alleged in the TriStar Litigation[7]) legitimate tower aggregators (with whom VB regularly does business) do *not* resort to misappropriating trade secrets for purposes of conducting their business. *See* DE 1 ¶ 33. Rather, these tower aggregators rely on their market research, analysis, experience, and skill to develop competitive offers. *See id*. Everest, however, describes the intensive process of preparing an offer based on a research-driven multiple as simply "guesswork," and presumably sufficient justification for misappropriation. *See* Br. at 11. Of course, nothing in DTSA or PUTSA creates an exception that permits misappropriation under circumstances where maintaining a competitive business requires effort. Further, the mere fact that others are acting unlawfully (if that

---

[7] *See* TriStar Litigation, at DE 9.

were indeed the case, and there is no support other than Everest's counsel's say-so that it is) cannot excuse Everest's own admittedly unlawful behavior.

Even assuming Everest's argument had any merit, this argument depends entirely on resolving a factual dispute regarding how tower aggregators run their business. *See supra* pp. 2–3. But a motion to dismiss is not the correct vehicle for resolution of factual disputes, particularly where Everest's newly introduced facts directly contradict VB's Complaint. *See id.*

### C.   VB's Rent Payment Amounts And The Process Used To Determine Those Are Protectable Trade Secrets.

Everest next argues that VB cannot assert trade secret protection over the "output" (*i.e.*, the rent and escalation terms)[8] of its proprietary trade secret pricing model and, even if VB could, that trade secret protection is irrelevant because other parties can purchase that information. Br. at 13–14. This argument is fundamentally flawed in multiple ways.

***First***, in making this argument, Everest has again conceded that it is able to sufficiently identify the trade secrets at issue (the output, rent terms, and escalation terms). *See* Sec. I.B *supra*.

***Second***, Everest's argument depends on an oversimplification of VB's allegations. VB alleges that its trade secrets include not only rent amounts, but also "periodic rental payment increases" as well as "timing and amounts of escalators" that are used "on an individual-site basis."[9] DE 1 ¶ 30. This type of information falls squarely within the scope of "all forms and types of financial, business, [or] economic . . . information" that DTSA defines as a trade secret. *See* 18

---

[8] Significantly, elsewhere in its Brief, Everest *concedes* that VB's pricing information relates to more than just "rent amounts." *See* Br. at 11 ("Vertical Bridge claims Everest . . . find[s] out exactly what rent amount (and period rent increases) they are buying"); *id.* at 15 (acknowledging that VB alleges that "the individual rent terms are trade secrets because they are the product of VB's trade secret process" (*i.e.*, its "'confidential formula to set the pricing terms and pricing structure'") (quoting DE 1 ¶ 30).

[9] Notably, Everest does not even address whether any of VB's other pricing information, such as rent escalators and timing of such escalators, are protectable trade secrets. *See* Br. at Sec. I.C.

U.S.C.A. § 1839(3); *see also Etimine*, at \*5 ("Courts routinely have found that DTSA and PUTSA protect things such as . . . pricing"); *Rycon Specialty Foods, Inc. v. Wellshire Farms, Inc.*, No. 1:09-cv-2092, 2011 WL 1988016, at \*2 (M.D. Pa. May 23, 2011) (holding that plaintiff's pricing information was not subject to a motion to compel because "[t]he type of . . . pricing [information] at issue here falls squarely within the definition of a trade secret.").

*Third*, Everest's legal argument that pricing information is not protectable is inconsistent with well-established Third Circuit case law. Everest boldly claims that "***[t]he Third Circuit is clear*** that . . . 'pure pricing information, readily obtainable from other sources,' cannot" qualify as trade secret, but directly cites only a District of New Jersey case in support. Br. at 13 (emphasis added).[10]  In making this argument (and relying on a District of New Jersey case to do so), Everest reverses Third Circuit case law, which has in fact held that pricing information similar to VB's constitutes protectable trade secrets. Indeed, in *SI Handling Systems, Inc. v. Heisley*, which Everest references throughout its Brief (but fails to accurately cite), the Third Circuit concluded that plaintiff's "costing and pricing information," including "a whole range of data relating to materials, labor, overhead, and profit margin, among other things" that was not "readily obtainable by anyone in the industry" *was* subject to trade secret protection, although information about *another entity's material costs* was not. *See* 753 F.2d 1244, 1260 (3d. Cir. 1985). Similar to the plaintiff's trade secret information in *SI Handling*, VB's protected pricing and price structure information is the product of "a whole range of data" relating to pricing models and market analyses, and in certain situations was developed using VB's confidential formula. DE 1 ¶ 30.

---

[10] *Howmedica Osteonics Corp. v. Howard*, No. 19-19254, 2022 WL 16362464 (D.N.J. Oct. 28, 2022).

Furthermore, the *Howmedica* D.NJ. decision on which Everest relies directly undermines Everest's position and supports VB's. *See* Br. at 13. In *Howmedica*, the court noted that pricing information could be trade secret-protected under the DTSA, and distinguished between "pure pricing information" (standard, public pricing across all customers) and plaintiff's customer-specific pricing information, which is similar to VB's "individual-site basis" information: "[because plaintiff] d[id] not use a standard price for each product or customer . . . [t]his would mean that the information is not 'pure' pricing information." *See id.* at *18; *see also* DE 1 ¶ 30 (pricing information is set "on an individual-site basis."). Notably, the court in *Howmedica* analyzed a motion for summary judgment (following full factual discovery), rather than a motion to dismiss, and even then the court denied the motion because "the existence of a trade secret is a question of fact, not law." *See Howmedica*, 2022 WL 16362464, at *17.

Numerous other courts have similarly found that pricing information—like that at issue here—is subject to trade secret protection. *Etimine*, 2021 WL 1131256, at *5 ("Courts routinely have found that DTSA and PUTSA protect things such as . . . pricing"); *Project Development Grp., Inc. v. O.H. Materials Corp.*, 766 F.Supp. 1348, 1355 (W.D. Pa. 1991) (denying summary judgment with respect to whether plaintiff's bid proposal was trade secret protected "[b]ecause it has been held that pricing and estimating tactics and formulations deserve trade secret protection"); *Freedom Med.*, 343 F. Supp.3d at 520[11] (finding that plaintiff's pricing schedules "are protected trade secrets").

---

[11] Everest cites to *Freedom Med.* in support of this argument, but that case does not help Everest. In *Freedom Med.*, the court found that plaintiff's information was trade secret-protected "because [the information was] the product of a proprietary pricing formulae derived from a 'range of data relat[ed] to materials, labor, overhead, and profit margin.'" *Freedom Med.*, 343 F. Supp.3d at 520. So too is VB's pricing information. *See* DE 1 ¶ 30. "As such, the pricing [information is a] protected trade secret[]." *Id.* at 520.

**Fourth**, Everest argues that because it could have lawfully acquired VB's pricing information, such information is not a protectable trade secret. *See* Br. at 14. This argument, however, conflates what would have happened if Everest had behaved lawfully with what Everest actually does, which is decidedly unlawful. Everest points out that **had** it obtained VB's pricing information by becoming VB's Landlord using the methods of legitimate tower aggregators, it would then have obtained VB's pricing information, and that therefore "these legitimate aggregators and Everest [would] end up with the exact same information after closing." Br. at 14. This argument is akin to saying that the recipe to a fast food company's secret sauce is not a protectable trade secret and can be obtained through any means by that company's competitor just because in some cases the fast food company licenses a franchise and shares the recipe with a licensee. Such an argument is obviously absurd. Misappropriation of trade secrets is unlawful regardless of the fact that misappropriation and lawful appropriation can end up with the same result. This basic concept is clear when one reviews the DTSA. 18 U.S.C.A. § 1839 (defining misappropriation as trade secret use "without express or implied consent by a person who (i) used improper means to acquire knowledge of the trade secret"). Thus, the Court should reject Everest's "would have/could have" arguments.

### D. Confidentiality Provisions Are Not Required For Trade Secret Protection.

Everest argues next that VB's pricing and price structure information cannot be trade secret-protected because not every VB Contract contains a confidentiality provision. *See* Br. at 14. In so arguing, Everest ignores the fact that VB's pricing and price structure information is set on an "individual site-basis[;]" thus, any lack of a confidentiality provision in one contract does not remove trade secret protection from the entire category of pricing information alleged, since the

information is site-specific.[12]  *See* DE 1 ¶ 30; *see also Howmedica*, 2022 WL 16362464, at *18–19 (whether plaintiff took reasonable measures to protect secrecy was a question of fact where plaintiff only required non-disclosure agreements "at times").[13]

Nonetheless, whether information is protected by a confidentiality provision is not dispositive of whether such information is considered a trade secret.[14]  Under the statutes' plain

---

[12] In the TriStar Litigation, ATC alleged trade secret misappropriation for TriStar's acquisition of ATC leases that contained ATC's pricing terms and confidentiality provisions. *See*  2014 WL 1327663, at *7. The court found that there were "substantial differences in the wording and scope of the confidentiality provisions contained" in the lease agreements presented following discovery, which prevented summary judgment on the DTSA claim. *Id*. ("These differences and the practical impediments to the Court's ability to itself analyze the 143 agreements, which are subject to different state laws, with minimal guidance from the parties, militates against the Court deciding the claim as a matter of law."). In the case at bar, the universe of relevant sites and leases is as yet not fully known, because the nature of Everest's scheme prevents VB from knowing precisely what sites Everest has targeted or is currently targeting. VB does know, however, and has alleged (similar to ATC in the TriStar Litigation) that "Everest … targets Towers that it believes are subject to soon-to-be expiring ground leases" across multiple states in VB's nationwide network. DE 1 ¶ 34; *see also* TriStar Litigation, at DE 9.

[13] Everest cites to *Howmedica* to support its argument that confidentiality provisions are required for trade secret protection. *See* Br. at 15 (claiming that *Howmedica* found "no trade secret protection where 'only *some* . . . customers enter into non-disclosure agreements with respect to . . . pricing information'"). The *Howmedica* quote Everest relies on, however, is taken out of context, and relates to the court's analysis of whether defendant breached a non-disclosure clause in the parties' contract. *See Howmedica*, 2022 WL 16362464, at *10–11. Notably, the court declined to grant plaintiff's summary judgment motion for its trade secret claim because there was "a genuine dispute as to a question of fact" regarding whether plaintiff took reasonable measures to protect its purported trade secrets, despite the fact that the plaintiff only required non-disclosure agreements to protect its information "at times." *See id*. at *18–19. Everest's cite to *REACT Environmental Prof. Servs. Group. Inc. v. Buzan* fares no better. Br. at 15. In *REACT*, the court granted defendant's motion for summary judgment on plaintiffs' DTSA claim where plaintiffs did not dispute that "all clients to whom REACT provided proposals were free to use those proposals *however they chose*." 2021 WL 3604079, at *13 (emphasis provided). This, however, is in stark contrast to VB's Complaint, wherein VB describes the protective measures VB takes to prevent Landlords from disclosing its trade secret information. DE 1 ¶ 31.

[14] The two out-of-circuit cases that Everest cites in support, *Synopsys, Inc. v. Risk Based Security, Inc.* and *Town & Country Linen Corp. v. Ingenious Designs LLC*, are readily distinguishable and are both summary judgment cases. In *Synopsys*, the court affirmed that determination of reasonable measures "is a 'fact intensive' question," however, the court rejected plaintiff's trade secret claims after emphasizing that plaintiff provided "a global [billion dollar] company" with *the right to access, copy, and modify* its products, and did not place any confidentiality requirements on the

language, both the DTSA and PUTSA consider information trade secret where "the owner . . . has taken reasonable measures to keep such information secret." *See* 18 U.S.C.A. § 1839; *see also* 12 Pa. Cons. Stat. Ann. § 5302 (noting that trade secret information "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."). Noticeably absent from either statute is a requirement that the trade secret be subject to a confidentiality provision, as Everest suggests. *See* 18 U.S.C.A. § 1839; 12 Pa. Cons. Stat. Ann. § 5302; *Swift Bros. v. Swift & Sons, Inc.*, 921 F. Supp. 267, 277 (E.D. Pa. 1995) ("The defendants assert that the plaintiff had no confidentiality agreements…Such agreements are not necessary in every case, however, if the other precautions taken by the plaintiff are sufficient.").

Even if confidentiality provisions were necessary—which they are plainly not—Everest's own Motion concedes that at least two of the leases attached to Everest's Motion[15] do have such a provision. Br.at 15. Of course, VB does not agree that the eight leases Everest attached to its Motion are the only leases at issue. Further discovery is necessary to identify all leases (not just those that Everest unilaterally decided to attach to its Motion) obtained through a completed transaction ***and*** all leases that were obtained in connection with ongoing negotiations or aborted

---

company or its end users. *See* 2022 WL 3005990, at *16 (E.D. Va. Jul. 28, 2022). And in *Town*, plaintiff failed to establish "the existence of a confidentiality agreement *or any other measures reasonably taken to protect [the] information*," and the court quoted another S.D.N.Y. case, stating: "[A] formal [confidentiality] agreement is not necessary to establish secrecy . . . ." 556 F.Supp.3d 222, 262 (S.D.N.Y. 2021) (emphasis added) (citations omitted).

[15] VB objects to the consideration of the leases as they were not relied on in VB's Complaint. Such extrinsic evidence is not properly subject to judicial notice, nor is it appropriate to consider at the motion to dismiss stage. *See Morozin v. Johnson*, No. Civ.A. 11-2653, 2011 WL 587146, at *3 (E.D. Pa. Nov. 18, 2011) (declining to take judicial notice of the exhibits "as they [were] not proper . . . to consider as part of a motion to dismiss). Furthermore, given the very nature of Everest's unlawful scheme, VB did not and cannot know all of the sites impacted by Everest without discovery. Nonetheless, VB addresses the leases to preserve its arguments in the event that the Court disagrees.

transactions, **as well as** all the sites where Everest attempted but failed[16] to misappropriate VB's trade secrets.[17]  Thus, even if Everest's argument that confidentiality provisions are necessary were true, additional discovery would be needed to isolate those agreements at issue that do contain such a provision.[18]

Moreover, VB's Complaint sufficiently alleges that reasonable measures have been taken to warrant trade secret protection. In particular, VB alleges that it:

- "[I]ncorporate[es] confidentiality provisions into VB Contracts that prohibit Landlords from disclosing terms of their VB Contract to third parties;"
- Maintains documentation reflecting its trade secrets on an "internal, password-protected database;" and
- "[T]ak[es] steps to ensure that all trade-secret information is specifically redacted in all publicly recorded 'memoranda of lease' . . . to the fullest extent allowed by law."

DE 1 ¶¶ 31, 62. Furthermore, VB alleges that pricing information "is jealously guarded by industry participants," (DE 1 ¶ 37), and that "[t]he telecommunications infrastructure industry as a whole considers the type of pricing information at issue here to be trade secret-protected." DE 1 ¶ 63. Indeed, "industry participants generally take the same steps [as VB] to maintain the secrecy of their respective information." *Id*. Everest does not address any of these allegations in its Motion.

Notwithstanding the foregoing, determining whether VB has adequately protected its trade secrets simply cannot be decided at the motion to dismiss stage. "Courts have held that . . . 'the

---

[16] This is similar to the harm ATC alleged in the TriStar Litigation, where ATC presented evidence demonstrating that "even when TriStar bids unsuccessfully for ATC sites, it substantially increases ATC's costs per site . . . ." 2014 WL 1327663, at *10.

[17] Notably, in the case Everest cites in its Brief, *DeCurtis*, the court declined to consider extrinsic documents attached to the motion to dismiss "because . . . there is an ongoing disagreement on whether these items constitute all of the communications between the parties. […]  Thus, the universe of these documents is in dispute, negating any possibility that they should be considered on a motion to dismiss." *Decurtis*, 2021 WL 1968327, at *3.

[18] *See Callery v. HOP Energy*, No. 20-3652, 2023 WL 2601178, at *2 (E.D. Pa. Mar. 22, 2023) ("Defendant's arguments [include] information to which Plaintiff does not have access before discovery, [and] are more appropriate for resolution after the factual record has been developed.").

determination of whether a plaintiff's efforts to maintain the secrecy of its alleged trade secrets were reasonable is not a question susceptible of black-or-white analysis.'" *Warman*, 2022 WL 17960722, at *11 (citations omitted); *see also id.* (denying summary judgment on plaintiff's trade secret claims where "genuine issues of material fact exist regarding whether [plaintiff] took reasonable measures to guard the secrecy of what he claims to be a trade secret."); *Etimine*, 2021 WL 1131256, at *5 ("Moreover, whether a plaintiff has taken sufficient measures to protect its trade secrets is a question of fact more appropriately determined with a fully developed record.").

**E.    VB's Pricing Information Is Trade Secret-Protected, Regardless Of Whether It Was Developed With VB's Confidential Formula.**

Citing only one case in support,[19] Everest argues that VB's pricing and price structure information is "not entitled to trade secret protection" where VB is an assignee of the VB Contracts containing such information. *See* Br. at 16.

This argument is flawed in several respects. First, neither statute provides trade secret protection to only those who initially ***developed*** the trade secret at issue. *See* 18 U.S.C.A. § 1839(4) ("[T]he term 'owner', with respect to a trade secret, means the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed"); 12 Pa. Cons. Stat. Ann. § 5302 (no development requirement). Second, it is well-established that entities can purchase the trade secrets of another (as is the case here). *See Intellisoft, Ltd. v. Acer Am. Corp.*, 955 F.3d 927, 932 (Fed. Cir. 2020) (plaintiff "did not need to prove that [it was the inventor of the

---

[19] Everest cites to only *Nicolo v. Patterson Belknap Webb & Tyler, LLP* in support. *Id.* (citing No. 13-cv-706, 2016 WL 5661737, at *3 (W.D. Pa. Sept. 30, 2016)). However, *Nicolo* is wholly inapposite. In *Nicolo*, the court granted summary judgment on plaintiff's trade secret claim where plaintiff attempted to assert trade secret protection over "a series of admissions" that plaintiff previously made about his lack of plans for marketing and developing his patents. *Id.* at *4. VB's pricing information is not akin to plaintiff's mere admissions in *Nicolo*. *See* DE 1 ¶ 30. Moreover, even the court in *Nicolo* declined to grant defendant's prior motion to dismiss. *See Nicolo*, 2016 WL 5661737, at *4.

claims in the patent at issue], but needed to show only that [plaintiff] by assignment . . . was the owner of the trade secrets."); *see also Advanced Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 323 (M.D. Pa. 2014) ("information forming the basis of a trade secret can be transferred" and "it is the information's continuing secrecy that offers value—and a cause of action—to its possessor."). Third, the relevant inquiry is not who developed the trade secret, but whether VB has exercised lawful possession over the asserted trade secret information. *See Advanced Fluid Sys.*, 28 F. Supp. 3d at 323 ("It is enough . . . that plaintiffs demonstrate lawful possession of a trade secret in order to maintain a misappropriation claim."); *see also* Sec. I.D *supra*.

Further, regardless of whether VB developed the trade secrets on its own, VB still alleges that the VB Contracts "contain trade secret-protected information" even if such trade secrets were developed by VB's predecessor. *See* DE 1 ¶ 69; Sec. I.D *supra*. To the extent that any VB Contracts were inherited, the pricing information in those contracts is still subject to trade secret protection because VB became the lawful owner of such trade secrets upon assignment of the VB Contracts, and continued treating such trade secrets as confidential by using reasonable means to protect them. *See* 18 U.S.C.A. § 1839(4); *see also* Sec. I.D *supra*. The sufficiency of such protective measures is a question of fact more appropriately decided after discovery. *See Etimine*, 2021 WL 1131256, at *5.

## II.    VB's Lanham Act Claim is Well-Pled.

Everest's only challenge to VB's Lanham Act claim is with respect to the first element of the relevant cause of action: whether the defendant made false or misleading statements in commercial advertising or promotion relating to products or services. *See* Br. at Sec. II; *see Shure Inc. v. Clearone, Inc.*, 2020 WL 2839294, at *5 (D. Del. June 1, 2020). Everest's argument fails because VB has sufficiently pled that Everest made misleading statements during promotion of Everest's services to Landlords. *See infra* Sec. II.B–D.

**A.    VB's Allegations Are Sufficient Under Any Pleading Standard.**

Everest attempts to impose a heightened pleading standard under Fed. R. Civ. P. 9 to VB's Lanham Act claim, relying primarily on *Max Daetwyler*. *Max Daetwyler Corp. v. Input Graphics, Inc.*, 545 F. Supp. 165, 171 (E.D. Pa. 1982) and *Registered Agent Solutions, Inc. v. Corp. Serv. Co.*, No. 21-cv-786, 2022 WL 911253 (D. Del. Mar. 28, 2022) (which itself cites to *Max Daetwyler*). However, since the United States Supreme Court's landmark decisions in *Twombly* and *Iqbal*, that is not the correct standard for a Lanham Act claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Iqbal*, 556 U.S. at 678. Courts in this Circuit have applied the Rule 8 standard to these claims, rather than Rule 9.[20]   *See Shure Inc.*, 2020 WL 2839294, at *5 n.12 (rejecting an intermediate pleading standard for Lanham Act claims and explaining that "district courts in this Circuit . . . usually cite for support to a 35-year-old, pre-*Twombly/Iqbal* decision[]: *Max Daetwyler* . . . ."); *Valley Forge Military Academy Found. v. Valley Forge Old Guard, Inc.*, 24 F.Supp.3d 451, 454 (E.D. Pa. 2014) (applying Rule 8 pleading standard). Nonetheless, as further explained below, even if the Court were to apply the Rule 9 pleading standard here, VB's well-pled allegations are more than sufficient to meet that standard.

**B.    VB Sufficiently Alleged That Everest's Statements Are Actionable Misrepresentations Under The Lanham Act.**

*First*, Everest argues that VB's allegations are insufficient because "[p]ure omissions are not actionable under the Lanham Act." Br. at 19. In support, Everest cites to *FMC Corp. v. Summit Agro USA, LLC* for the proposition that "in and of itself an omission is insufficient" to state a Lanham Act claim. *Id*. (citing *FMC Corp. v. Summit Agro USA, LLC*, No. CV 14-51-LPS, 2014

---

[20] VB acknowledges that the case law among the district courts of the Third Circuit is unsettled. However, in light of *Iqbal* and *Twombly*, and as explained further above, the Rule 8 standard should apply to assessing Lanham Act claims.

WL 6627727, at *6 (D. Del. Nov. 14, 2014)). The rest of the quoted sentence in *FMC Corp.*, however, demonstrates why Everest's argument is meritless. The sentence reads: "Thus, ***while a key omission of fact might contribute to a Section 43(a) claim's efficacy,*** in and of itself an omission is insufficient; the plaintiff must also point to an actionable affirmative statement in order to breathe life into such a claim." *Id.* (emphasis added). Notably, the plaintiff in *FMC Corp.* "never highlighted any affirmative statement at all," and the court noted that "[a] fair reading of [plaintiff's claim] indicates that [plaintiff] was not . . . intending to rely on anything other than an omission of fact to give life to the alleged Section 43(a) violation." *Id.* at *8, 12–13 (emphasis omitted). This bears no resemblance to VB's allegations. Here, VB alleged that Everest made misleading statements to Landlords regarding revenue share that caused Landlords to believe that they would indeed receive such revenue, as well as omissions. *See* DE 1 ¶ 51(a)-(d).

    ***Second***, Everest argues that VB alleges a "prediction of future events" that is non-actionable under the Lanham Act. Br. at 19. This is incorrect. In the case Everest cites for support, *Registered Agent Solutions*, the defendant had represented to customers that plaintiff was "going out of business soon," which was considered an expression of opinion. *See Registered Agent*, 2022 WL 911253, at *5. Here, however, VB alleges that Everest ***knows*** that its promise to Landlords is false at the time it is made. *See* DE 1 ¶ 51 ("Everest is aware that the Landlords will never receive that projected revenue"). This misrepresentation falls squarely under the Lanham Act.[21]  *See Shure Inc.*, 2020 WL 2839294, at *7 (denying motion to dismiss Lanham Act claim where defendant stated that plaintiff's allegedly infringing product "would soon be 'unavailable'" because the statement was "clearly untrue, in light of the then-current state" of the patent litigation).

---

[21] For example, in its simplest form, the statement "I promise to sell you my car next week" can certainly be considered a false or misleading statement if, at the time I made the statement, I did not have a car to sell (and indeed had no intention of ever selling anything to you).

***Third***, Everest asserts that VB's Complaint demonstrates that Everest's promises could be true. Yet again, Everest mischaracterizes VB's allegations. *Compare* Br. at 19, *with* DE 1 ¶ 51.[22] VB alleges that Everest's promise to pay future revenue is primarily dependent on VB keeping its towers at the sites once the VB Contracts expire, which VB typically would not do. DE 1 ¶ 51 ("Everest is aware that the Landlords ***will never receive*** th[e] projected revenue [promised]," and that "the financial benefit promised is contingent on Vertical Bridge keeping the Towers in place after the current VB Contracts expire, ***which Everest is aware that Vertical Bridge would not and does not do***"). Because Everest's revenue share promise primarily depends on VB's presence at the site, and Everest ***knows*** that VB would immediately leave the site upon learning of Everest's interest therein, Everest knows at the time of making its promise that the Landlord will never receive any revenue. DE 1 ¶ 51.

### C. VB Sufficiently Alleged that Everest's Statements Were Made in Promotional Communications.

Everest admits that "commercial advertising or promotion for purposes of the Lanham Act must be, among other things, 'sufficiently disseminated to the relevant purchasing public to constitute advertising or promotion within the industry.'" Br. at 20.[23]  Yet Everest argues that VB

---

[22] Everest argues that because VB includes an illustrative example in its Complaint that somehow subjects VB's Complaint to dismissal for failure to state a claim. Br. at 7. This strawman argument ignores the several allegations in VB's Complaint and once again takes a single quote from a factually distinct opinion and misconstrues it to support its otherwise baseless argument. In *Pittsburgh Logistics Sys., Inc. v. Cox Logistics LLC*, the plaintiff attached a sample contract that it typically sent to its business partners in an effort to establish a valid and enforceable contract with the defendant. No. 20-817, 2021 WL 811394, at *4 (W.D. Pa. Mar. 3, 2021). The court rejected the notion that the existence of a sample contract where there were no allegations that the defendant had ever seen this example contract could somehow establish an enforceable contract with the defendant. *Id*. Here, however, unlike the plaintiff in *Pittsburgh Logistics*, VB's factual allegations show that Everest's scheme works exactly as outlined in the example. Specifically, VB plead, in definitive terms, that Everest has made misleading statements to VB's Landlords which Everest knows are false at the time of making such statements. *See* DE 1 ¶ 51.

[23] Everest cites *Synthes, Inc. v. Emerge Med., Inc.*, for support. Br. at 20 (citing 25 F.Supp. 3d 617, 717 (E.D. Pa. 2014)). In *Synthes*, the court was not analyzing a motion to dismiss. *See id*. at 718.

does not plead as such because it does not "identify any misstatements in any television commercials, internet advertisements, print advertisements, trade publications, or press releases." *Id*. The Lanham Act, however, is not limited to traditional advertising. "The 'touchstone' of whether a defendant's statements amount to the requisite commercial advertising or promotion is 'that the contested representations are part of an organized campaign to penetrate the relevant market.'" *Shure Inc.*, 2020 WL 2839294, at *6.

Here, the relevant market is VB's nationwide telecommunications-infrastructure network and the thousands of Landlords with whom VB has relationships in support of this network. VB has alleged that Everest has targeted these Landlords and has, among other things, misrepresented its services to the Landlords and the future revenue share such Landlords would receive if they chose to accept Everest's offers. Such statements constitute advertisements or promotions under the Lanham Act. *Shure Inc.*, 2020 WL 2839294, at *6–7. In particular, statements disseminated in letters to a competitor's customers or potential customers, similar to those Everest sent,[24] have been held to constitute advertisements or promotions under the Lanham Act. *See Carpenter Tech. Corp. v. Allegheny Techs., Inc.*, 646 F. Supp.2d 726, 736–37 (E.D. Pa. 2009) (denying motion to dismiss where the parties were "market competitors," and defendant sent letters to plaintiff's "actual and potential customers" allegedly "to discourage [plaintiff's] business and to improve its own.").[25] As such, the Court should reject Everest's argument that its misrepresentations were not

---

Rather, the court was analyzing plaintiff's motion for summary judgment after the court had previously denied the motion to dismiss due to the court's "reasonable inferences from [plaintiff's] allegations [that] suggest[ed] that [the allegations] . . . exemplify a broad and widespread dissemination of the statements to the relevant purchasing public . . . ." *Id*.

[24] *See* DE 1 ¶¶ 38, 51, 53.

[25] *See Shure Inc.*, 2020 WL 2839294, at *7 (denying motion to dismiss where defendant sent letters to "more than a dozen" customers); *see also id*. (citing *Gen. Sec. Inc. v. Commercial Fire & Sec., Inc.*, No. 17-CV-1194 (DRH) (AYS), 2018 WL 3118274, at *8 (E.D.N.Y. June 25, 2018) (holding that plaintiffs sufficiently pled this element where they alleged that defendants took affirmative

made in advertisements or promotions.

       **D.**       **VB Sufficiently Alleged that Everest's Statements Relate to Services.**

Finally, Everest takes the position that it cannot be held liable for Lanham Act violations because "'intangible property rights,' like trademarks or the real property rights at issue, 'are not "goods or services" for Lanham Act purposes.'" *See* Br. at 21. However, "[t]he term 'services' as used in the Lanham Act [is] interpreted broadly." *See Valley Forge Military Academy Foundation v. Valley Forge Old Guard, Inc.*, 24 F. Supp. 3d 451, 456 (E.D. Pa. 2014). VB alleges that Everest offers to act "as the owner/operator of the Tower" on the Landlord's property, and additionally makes promises "to host its own tenants to provide revenue share to the Landlords." DE 1 ¶ 38. Such acts are sufficient to qualify as "services" in the telecommunications industry and under the Lanham Act, as the tower aggregator and telecommunications company are providing services to the Landlords and others in the community by managing and operating the telecommunications towers, and controlling the operations of the wireless carrier tenants located thereon.

**III.**    **VB's Remaining Claims Do Not "Rise and Fall" With Its Trade Secret Misappropriation and Lanham Act Claims.**

VB's unjust enrichment, tortious interference, and unfair competition claims do not solely "rely" on Everest's trade secret misappropriation and Lanham Act violations. As set forth in VB's Complaint, the claims also request relief for the following unlawful conduct:

- ***Unjust Enrichment***: Everest was unjustly enriched upon acquiring confidential VB Contracts regarding VB's pricing information, and further appreciated the benefit of such information by using it to structure its offers to Landlords. *See* DE 1 ¶¶ 93–95; *see also Peterson v. Johnston & Rhodes Bluestone, Co.*, No. 3:18-cv-2222, 2019 WL 3202166, at *2 (M.D. Pa. Jul. 16, 2019). Whether or not the information is trade secret-protected, Everest still wrongfully acquired VB's confidential information. Thus, the claim does not "rise and fall" with VB's trade secret claims*.*

---

steps to contact 'several of [p]laintiffs' customers,' which suggested a systematic effort to solicit such customers)).

- **Tortious Interference**: Everest improperly interfered with VB's Landlords by (1) inducing the Landlords to disclose information protected by confidentiality obligations (whether or not trade secret-protected); (2) persuading the Landlords to violate VB Contracts' consent-for-assignment provisions; and (3) presenting Landlords with non-*bona fide* purchase offers specifically structured to circumvent VB's ROFRs. *See* DE 1 ¶¶ 100–103; *see also Advanced Fluid Sys.*, 28 F. Supp.3d at 336. Because VB's allegations are not limited to Everest's trade secret misappropriation in interfering with VB Contracts,[26] the claim does not "rise and fall" with VB's trade secret claims.

- **Unfair Competition**: Everest improperly interferes with VB Contracts and wrongfully uses VB's confidential information (whether or not trade secret-protected). *See* DE 1 ¶¶ 126–128; *see also Tungsten Heavy Powder and Parts, Inc. v. Global Tungsten & Powders Corp.*, No. 4:17-cv-01948, 2018 WL 3304550, at *3 (M.D. Pa. Jul. 5, 2018). Because VB's allegations are not limited to Everest's trade secret misappropriation, the claim does not "rise and fall" with VB's trade secret claims.

Accordingly, VB has adequately alleged each of the foregoing claims.

## IV.   VB Has Standing, is the Real Party in Interest, and No Further Parties are Required.

Everest makes a last-ditch argument that VB's Complaint must be dismissed because VB does not include its subsidiaries as parties to the Complaint, which Everest claims are "necessary parties." *See* Br. at 23.

However, all of the case law that Everest cites in support is inapposite and involves esoteric issues that arise in derivative shareholder litigation. *See* Br. at Sec. IV(A).[27] Furthermore, the court in *Algemene* left a carve-out to the rule Everest cites in its brief. *See* Br. at 23 (citing *Joseph v. Algemene Bank Nederland, N.V.*, 592 F. Supp. 141, 148 (W.D. Pa. 1984)) (stating that "[a]n action

---

[26] Everest additionally requests dismissal of the tortious interference claims and misconstrues VB's Complaint to assert that the *only* contracts at issue are the ones to which VB subsidiaries are signatories. *See* Br. at 24. This is incorrect. While VB alleges that it is a parent company to all of the subsidiaries that are parties to certain VB Contracts, that does not in turn mean that *all* VB Contracts are between subsidiaries and a third party. As VB has previously explained, VB does not yet have knowledge (without the benefit of full discovery) of exactly which VB Contracts Everest has interfered with. Because it is likely that VB itself is party to some of the VB Contracts, any dismissal is premature before discovery reveals the exact contracts at issue.

[27] For example, in *McRae v. Smith*, the court found that the corporation, not the shareholder, was "the registered owner" of the trademarks and therefore "the real party in interest." 159 Fed.Appx. 336, 338 (3d Cir. 2005). Everest ignores the fact that VB is "the . . . owner" of the trade secrets at issue and therefore is "the real party in interest."

to redress injuries to a corporation cannot be maintained by a shareholder in his own name . . . . [T]his rule does not apply in a case where the shareholder shows a violation of a duty owed directly to him.").

Unlike the plaintiff in *Algemene*, VB has sufficiently alleged violation of a duty owed directly to VB:  The duty to refrain from misappropriating VB's trade secrets. Specifically, VB alleges that it is ***VB's*** trade secrets—not its subsidiaries', that Everest has misappropriated. *See* DE 1 ¶ 30. Therefore, VB has standing as the real party in interest.

Lastly, Everest requests that the Court dismiss VB's Complaint because it claims that VB's subsidiaries "are necessary parties, pursuant to Rule 19(a)(1)(B)." Br. at 24. Yet, Everest "bears the burden of showing why [VB's subsidiaries] should be joined under Rule 19." *Disabled in Action*, 635 F.3d at 96. Everest has not met that burden. In fact, it fails to even set forth the standard for Rule 19 or make any real effort to explain why VB's subsidiaries are indispensable. *See* 6 Fed. Prac. & Proc. Civ. § 1543 ("The fact that an absent party could bring the action as a real party in interest does not of itself make that party a necessary or indispensable party."). Because VB's subsidiaries are not necessary parties to the action, Everest's Motion must be denied.[28]

## <u>CONCLUSION</u>

In light of the foregoing, VB respectfully requests that the Court deny Everest's Motion in its entirety.

---

[28] In the event that the Court finds that VB's subsidiaries are in fact necessary parties (and such a conclusion is not supported, as explained above) the remedy is certainly not dismissal with prejudice, but amendment wherein VB simply includes every single one of its subsidiaries that could be at issue in Everest's scheme.

Dated: August 29, 2023

Respectfully submitted,

*/s/ Kelsi E. Robinson*

David R. Osipovich (PA ID No. 306687)
Anna Shabalov (PA ID No. 315949)
Jessica L.G. Moran (PA ID No. 325912)
Kira M. Geary (PA ID No. 330334)
**K&L Gates LLP**
K&L Gates Center
210 Sixth Ave.
Pittsburgh, PA 15222
Tel: (412) 355-6578
david.osipovich@klgates.com
anna.shabalov@klgates.com
jessica.moran@klgates.com
kira.geary@klgates.com

-and-

Kelsi E. Robinson (PA ID No. 330452)
**K&L Gates LLP**
10100 Santa Monica Blvd., 8th Floor
Los Angeles, CA 90067
Tel: (310) 552-5060
kelsi.robinson@klgates.com

***Attorneys for Plaintiff Vertical Bridge
REIT, LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using CM/ECF system and will be served upon the registered participants identified on the Notice of Electronic Filing.

_/s/ Kelsi E. Robinson_____
Kelsi E. Robinson
