**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

VERTICAL BRIDGE REIT, LLC, et al.,

        Plaintiffs,

      v.

EVEREST INFRASTRUCTURE
PARTNERS, INC.; EIP HOLDINGS II, LLC,

        Defendants.

No. 2:23-cv-1017-WSH

Judge W. Scott Hardy

**MEMORANDUM OF LAW IN SUPPORT OF EVEREST'S
<u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS ........................................................................ 2

STANDARD OF REVIEW ....................................................................... 5

ARGUMENT ............................................................................................ 6

    I.      VERTICAL BRIDGE'S TRADE SECRET CLAIMS MUST BE DISMISSED BECAUSE ITS SUPPOSED TRADE SECRETS HAVE ALL BEEN IN THE HANDS OF THIRD PARTY LANDLORDS WITH EVERY RIGHT AND INCENTIVE TO SHARE THEM. ................................. 6

            1.      Type One:  Vertical Bridge-Originated Leases with Confidentiality Provisions.  (SAC ¶¶ 83–100)...................................................... 9

            2.      Type Two:  Leases Acquired From Third Parties That Had Confidentiality Provisions From Inception  (SAC ¶¶108–10)................ 11

            3.      Type Three:  Leases Acquired From Predecessors That Were Amended by Vertical Bridge to Incorporate Confidentiality Provisions (SAC ¶¶ 123–30)..................................................................... 13

            4.      Type Four:  Leases That Never Had Confidentiality Provisions (SAC ¶¶ 131–53). ......................................................................... 14

    II.      THE TRADE SECRET CLAIMS MUST BE DISMISSED BECAUSE THE SUPPOSED TRADE SECRETS ARE READILY ASCERTAINABLE BY PROPER MEANS. ...................................................... 16

    III.     THE STATE LAW CLAIMS MUST BE DISMISSED ON THE SAME GROUND AS THE TRADE SECRET CLAIMS ............................................. 17

    IV.     IF ANY CLAIMS ARE NOT DISMISSED UNDER RULE 12(B)(6), THEN THEY MUST BE DISMISSED UNDER TO RULE 12(B)(7) FOR FAILURE TO JOIN THE LANDLORDS AS NECESSARY PARTIES ........... 19

CONCLUSION ......................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. passim

*Baim v. Dukart*,
620 F. Supp. 3d 207 (E.D. Pa. 2022) ........................................................................3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................5, 11

*Burtch v. Milberg Factors, Inc.*,
662 F.3d 212 (3d Cir. 2011) ......................................................................................6

*Cole's Wexford Hotel, Inc. v. Highmark, Inc.*,
2019 WL 3778090 (W.D.Pa., 2019) ........................................................................11

*D.M. ex rel. Ray v. Philadelphia Hous. Auth.*,
613 F. App'x 187 (3d Cir. 2015) ...............................................................................3

*Elias Indus., Inc. v. Kissler & Co. Inc.*,
2021 WL 2141509 (W.D. Pa. May 26, 2021) ......................................................7, 15

*EMC Outdoor, LLC v. Stuart*,
2021 WL 1224064 (E.D. Pa. Mar. 31, 2021) ............................................................7

*Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*,
80 F.4th 223 (3d Cir. 2023) .....................................................................................20

*Glades Pharms., LLC v. Call, Inc.*,
2005 WL 563726 (E.D. Pa. Mar. 9, 2005) .........................................................20, 21

*Hearing Lab Tech., Inc. v. Hearing Instruments, Inc.*,
2017 WL 3208676 (W.D. Pa. July 27, 2017) ..........................................................22

*Hirtle Callaghan Holdings, Inc. v. Thompson*,
2022 WL 2048656 (E.D. Pa. June 7, 2022) ............................................................18

*Krantz v. Prudential Invs. Fund Mgmt. LLC*,
305 F.3d 140 (3d Cir. 2002) ......................................................................................6

*Lessel, Winkle, Yard, Inc. v. Advanced Telecommunications Network, Inc.*,
1994 WL 263322 (E.D. Pa. June 10, 1994) ................................................................21

*Minielly v. Acme Cryogenics, Inc.*,
2016 WL 1221640 (E.D. Pa. Mar. 28, 2016) ..................................................12, 14

*NOVA Chems., Inc. v. Sekisui Plastics Co.*,
579 F.3d 319 (3d Cir. 2009)......................................................................1, 6, 7, 14

*Oakwood Labs. LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2021)..........................................................................6, 12, 14

*Pittsburgh Logistics Sys., Inc. v. Cox Logistics LLC*,
2021 WL 811394 ..........................................................................................18

*Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*,
2020 WL 759952 (W.D. Pa. Jan. 29, 2020)................................................................7

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984).......................................................................................7, 11, 15

*Shire US, Inc. v. Allergan, Inc.*,
375 F. Supp. 3d 538 (D.N.J. 2019) ..........................................................................18

*SI Handling Sys., Inc. v. Heisley*,
753 F.2d 1244 (3d Cir. 1985)...........................................................1, 7, 11, 15

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
2019 WL 4573705 (S.D. Cal. Sept. 19, 2019)........................................................22

*Whitaker v. Herr Foods, Inc.*,
198 F. Supp. 3d 476 (E.D. Pa. 2016) ......................................................................18

**STATUTES**

12 Pa. Cons. Stat. § 5302 ............................................................................................16

18 U.S.C. § 1839........................................................................................................16

**OTHER AUTHORITIES**

Fed. R. Cov. P. 12 ............................................................................................... passim

Fed. R. Civ. P. 19 ................................................................................................19, 20

## INTRODUCTION

"[T]he most important characteristic of a trade secret is that it is in fact secret." *NOVA Chems., Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 327 (3d Cir. 2009) (quotation omitted). Vertical Bridge's third attempt to plead plausible trade secret claims makes it unmistakably clear that it can never allege secrecy because its offers containing the alleged trade secrets have all "already [been] in the hands of third parties . . . who have every incentive, and every right, to disclose [them]" to whomever they wish. *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1257 (3d Cir. 1985) (rejecting trade secret protection).

After two rounds of vague and incoherent allegations, this Court found that it was "not clear to the Court that confidentiality *obligations* [were] alleged in the Amended Complaint," and held, "to the extent that the VB Plaintiffs have relied on their allegations of making requests to landlords to maintain confidentiality of offers or pricing and price structure terms in VB Contracts without arriving at any *agreement* to keep that information confidential, the Court cannot draw an inference of a confidentiality obligation." *See* ECF # 44 ("May 23 Order") at 20 n.14 (second emphasis added). After the Court's clear instruction, Vertical Bridge *still* does not allege any instance—ever—where a landlord *agreed* to keep Vertical Bridge's offers confidential. Instead, Vertical Bridge relies only on "requests" to landlords. But requests are not "agreements" or "obligations" to maintain confidentiality. The third complaint therefore fails to plausibly allege any trade secrets.

The third complaint also makes it clearer than ever that the rent terms are readily ascertainable via proper means and that Vertical Bridge's tag-along state law claims follow form on its trade secret claims and therefore fail for the same reasons. In sum, Vertical Bridge's third bite at the apple leaves no doubt that it has no case against Everest. The third complaint should be dismissed with prejudice for failure to state a claim. But if any claims survive Rule 12(b)(6),

1

the Court should still dismiss the third complaint under Rule 12(b)(7) for failure to join the landlords as necessary parties.

## STATEMENT OF FACTS

After two rounds of motion to dismiss briefing, the Court is well familiar with the background of this litigation, so Everest will not repeat those facts here.  *See* ECF # 21 (Everest's Motion to Dismiss the First Complaint) at 3–9; ECF # 41 (Everest's Motion to Dismiss the Amended Complaint) at 4–9; May 23 Order at 2–9.

That said, it is instructive to look at how Vertical Bridge has changed its story this time around in the Second Amended Complaint (ECF #48, "SAC" or "third complaint").

***Vertical Bridge abandoned its self-contradictory Lanham Act "Scheme."***  Vertical Bridge dropped its Lanham Act claim and with it the "perplexing" allegations that Everest pursues ground leases for Vertical Bridge tower sites with "plans for revenue generation" while simultaneously "knowingly offer[ing] a revenue share that is illusory."  *See* May 23 Order at 13–14 n.10 (quotation omitted); *see generally* SAC.

***Vertical Bridge now concedes that it "executed" rights of first refusal for some of the tower sites at issue***.  SAC ¶ 156.  In its first complaint, Vertical Bridge alleged that "Many VB Contracts contain rights of first refusal ('ROFR(s)') whereby Vertical Bridge has the option to purchase an interest in the Landlord's property on substantially the same material terms as those made in a *bona fide* offer to the Landlord by a third-party potential purchaser."  ECF # 1 ¶ 28.  These ROFRs made up a core part of Everest's alleged Lanham Act "scheme," as Vertical Bridge claimed that Everest's supposedly illusory offers were "specifically designed to subvert Vertical Bridge's ROFR."  *Id*. ¶ 40.

Having now ditched the Lanham Act scheme, Vertical Bridge admits that it actually "executed" its ROFR for some of the sites at issue.  SAC ¶ 156.  In other words, pursuant to the

2

ROFRs, Vertical Bridge received and matched Everest's offers—which recited the supposed

trade secrets from the underlying leases—from landlords. *See* SAC ¶ 76; ECF ## 50, 50-1

(Everest's offer letters, filed as exhibits to the third complaint). But there is more: Instead of

enforcing the landlords' supposed confidentiality obligations, Vertical Bridge ***waived its ROFR***

on sites it identifies in the SAC, namely Pierce and Weis. *See* SAC ¶¶ 89–94 (Pierce); ¶¶ 95-100

(Weis); Declaration of Jeffrey Baltruzak dated June 20, 2024 ("Baltruzak Dec."), Ex. A (Waiver

letters); Baltruzak Dec., Ex. B (Waiver email chain).[1]  Vertical Bridge's waiver correspondence

does not claim Everest's offers were made using Vertical Bridge's "trade secrets," or object to

Everest's offers at all. *See* Baltruzak Dec., Exs. A, B. The Pierce and Weis sites also happen to

be two of the three sites identified by Vertical Bridge in the SAC where: (i) Vertical Bridge is

the original tenant in the lease and negotiated it with the landlord (*i.e.*, the lease was not acquired

from a predecessor); and (ii) the lease has a confidentiality clause. SAC ¶¶ 89–94 (Pierce); ¶¶

95–100 (Weis).

      In waiving these ROFRs, Vertical Bridge knowingly and voluntarily relinquished any

supposed rights it had to confidentiality, and therefore waived the right to rely on them here. *See*

*Baim v. Dukart*, 620 F. Supp. 3d 207, 212 (E.D. Pa. 2022) (waiver is the "intentional and

voluntary relinquishment or abandonment of a known contractual right," which can be inferred

where "the waiving party's conduct [is] inconsistent with a desire to rely on the provision at

issue"). If Vertical Bridge had an issue with the landlords' disclosures of lease terms, the time to

object was when those disclosures occurred—not in a post-hoc lawsuit where the landlords are

---

[1] On a motion to dismiss, the Court may consider this information because it is
"incorporated by reference or integral to the claim." *D.M. ex rel. Ray v. Philadelphia Hous.
Auth.*, 613 F. App'x 187, 189 n.6 (3d Cir. 2015) (quoting *Schmidt v. Skolas,* 770 F.3d 241, 249
(3d Cir. 2014); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

not even named as parties. *Cf. id.* (party waived anti-assignment provision by failing to object when assignee invoked right of first refusal). Vertical Bridge does *not* allege that it has ever objected to one of Everest's offers during the ROFR process because the offer reflected Vertical Bridge's trade secrets or that it has otherwise ever enforced its supposed confidentiality rights. The only plausible inference to be drawn from Vertical Bridge's ROFR activity is that Vertical Bridge does not, in fact, believe that its rent terms are trade secrets at all. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint should be dismissed where it fails to plead facts that allow the Court to draw a reasonable inference that defendant is liable).

The ROFR admission also establishes that Vertical Bridge's Lanham Act claim was disingenuous from the get-go. Whereas Vertical Bridge once claimed that "where Everest obtains an interest in the site, Everest knows that VB will decommission its tower" (ECF # 42 at 23), Vertical Bridge now pleads that it waived its ROFR and stayed on sites after Everest obtained its interest. SAC ¶ 156; *see* Baltruzak Dec., Exs. A and B. And where Vertical Bridge once claimed that it "cannot possibly match Everest's" offers (ECF # 38 ¶ 66), we now know that Vertical Bridge *has* matched Everest's offers (SAC ¶ 156).

***Vertical Bridge abandoned its non-credible allegation that "legitimate aggregators" purchase interests in tower sites without knowing what they are buying***. In its first two complaints, Vertical Bridge alleged that tower aggregation can be a "legitimate" practice, and distinguished Everest's alleged conduct by claiming that while "legitimate" aggregators base their offers to landlords on "estimation," Everest learns the actual rent payment terms of the relevant ground leases before making its offers. *See* ECF # 1 ¶ 33 ("Legitimate tower aggregators offer landlords lump-sum payments that are a fraction of the expected total rental revenue, based on the tower aggregator's estimation of market rent and utilizing a market-

determined multiple."); ECF # 38 ¶ 48 (same).  That allegation was never credible.  Tower aggregators are buying a stream of rental income; no rational buyer would pay for that stream sight-unseen based on a guess at what the rental stream might be.

In its third complaint, Vertical Bridge changed its story by dropping that allegation altogether.  *Compare id.*; *with* SAC ¶¶ 69–71.  Vertical Bridge acquires ground leases with confidentiality provisions, too (*id*. ¶ 108–12), and according to the SAC, Vertical Bridge "does not acquire Leases that are inconsistent with [its] model," which it cannot determine without seeing the lease terms in advance.  *Id*. ¶ 60.  There is only one plausible conclusion from these allegations:  Vertical Bridge only acquires leases after learning the economics of the existing lease arrangement (*i.e.*, exactly what Vertical Bridge alleges Everest does).

In all events, according to the third complaint, the only thing that separates Everest from what Vertical Bridge previously called "legitimate aggregators" is that Everest operates towers in addition to being an aggregator.  *Id*. ¶¶ 71–73.  But if Everest is doing the same thing as the other aggregators, it does not become improper just because Everest is the one doing it.  If the other aggregators are legitimate, then so is Everest.

Taken together, the revisions lay bare that Vertical Bridge never had any claims to begin with.  This lawsuit has never been anything more than an attempt to chill legitimate market competition.

## STANDARD OF REVIEW

The Court must dismiss a complaint if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, and dismissal is required if the factual allegations fail "to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.  Vertical Bridge must plead enough

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court must dismiss a complaint that is "merely consistent with a defendant's liability" if there are insufficient facts to make that inference reasonable.  *Id*. (quotation omitted).

Although the Court accepts well-pleaded allegations as true, it must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quotation omitted).  The Third Circuit requires a three-step process to evaluate whether a complaint alleges sufficient facts to state a facially plausible claim:

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quotation omitted).  The Court can dismiss with prejudice "where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."  *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002).

## ARGUMENT

### I.   VERTICAL BRIDGE'S TRADE SECRET CLAIMS MUST BE DISMISSED BECAUSE ITS SUPPOSED TRADE SECRETS HAVE ALL BEEN IN THE HANDS OF THIRD PARTY LANDLORDS WITH EVERY RIGHT AND INCENTIVE TO SHARE THEM.

Lack of secrecy dooms Vertical Bridge's claims.  *See NOVA Chems*., 579 F.3d at 327 ("[T]he most important characteristic of a trade secret is that it is in fact secret." (quotation

omitted)).[2]  Specifically, the third complaint makes it clear that the supposed trade secrets have all, at one point or another, been in landlord hands without any confidentiality obligations, and therefore cannot be trade secrets.  *See id.* at 328 (information "lost its trade secret status" when it was included in license agreement that did not require confidentiality); *SI Handling*, 753 F.2d at 1257 (no trade secret protection where information has "already [been] in the hands of third parties . . . who have every incentive, and every right, to disclose it"); *Profit Point Tax Techs., Inc. v. DPAD Grp., LLP*, 2020 WL 759952, at *6 (W.D. Pa. Jan. 29, 2020), *report and recommendation adopted*, 2020 WL 758833 (W.D. Pa. Feb. 14, 2020) (trade secret claims dismissed where the complaint alleged "limited disclosures . . . to third parties with no alleged duty to maintain secrecy.").  By placing its supposed trade secrets in the hands of landlords, Vertical Bridge extinguished any trade secret property right it had.  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.").  Any other result "would put an undue burden on the innocent [landlords], as well as place an artificial constraint on the free market." *Elias Indus., Inc. v. Kissler & Co. Inc.*, 2021 WL 2141509, at *6 (W.D. Pa. May 26, 2021) (quoting *SI Handling*, 753 F.3d at 1257).

In the May 23 Order, this Court ruled that Vertical Bridge had failed to sufficiently allege confidentiality, and also told Vertical Bridge what would be required for a plausible claim in this situation:

---

[2] Because the elements for misappropriation under the Pennsylvania Uniform Trade Secrets Act (PUTSA) are "substantively identical" to those under DTSA, Vertical Bridge's federal and state trade secret claims fall together.  *See* May 23 Order at 16 n.12; *EMC Outdoor, LLC v. Stuart*, 2021 WL 1224064, at *11 (E.D. Pa. Mar. 31, 2021) (analyzing DTSA and PUTSA claims together and dismissing both).

The VB Plaintiffs repeatedly refer to VB landlords' "confidentiality obligations"; however, it is not clear to the Court that confidentiality obligations [were] alleged in the Amended Complaint. The VB Plaintiffs seem to concede as much in their brief in opposition to the motion to dismiss wherein they argue: "Nowhere in VB's [Amended Complaint] does VB allege that Landlords do not agree to the confidentiality obligations VB imposes on the Landlords, and the reasonable inference from VB's allegations is that the Landlord does agree to keep the terms confidential." **In the Court's view, the requested inference—inferring an agreement from an alleged request—is too big a gap for the Court to fill with a reasonable inference**.

\* \* \*

[T]o the extent that the VB Plaintiffs have relied on their allegations of making requests to landlords to maintain confidentiality of offers or pricing and price structure terms in VB Contracts without arriving at any agreement to keep that information confidential, the Court cannot draw an inference of a confidentiality obligation.

May 23 Order at 20 n.14 (emphases altered). Despite the Court's clear guidance, Vertical Bridge's third complaint makes it clear this fatal gap cannot be filled: Vertical Bridge does not allege that any landlord ever *agreed* to keep the "trade secrets" in offers a secret. There are zero allegations that the landlord signed nondisclosure agreements (NDAs) or otherwise agreed to keep offer terms confidential. Vertical Bridge alleges—at best—requests to landlords. SAC ¶¶ 64(c), 80–153. But this Court has already held Vertical Bridge cannot rely on "requests to landlords to maintain confidentiality of offers or pricing and price structure terms in VB Contracts" without alleging any "*agreement*" to keep that information confidential. May 23 Order at 20 n.14 (emphasis added). Therefore, "the Court cannot draw an inference of a confidentiality *obligation*." *Id*. (emphasis added).

In short, at this point it is painfully obvious that Vertical Bridge cannot allege any agreements because there are none. Absent agreements, there can be no inference of an obligation owed by third party landlords to Vertical Bridge. *Id*. Vertical Bridge's attempt to

solve this problem with information and belief allegations about what landlords unilaterally understood, SAC ¶¶ 126, 133, is, in truth, a fatal admission:  No landlord ever agreed to keep Vertical Bridge's offers confidential and hence no "obligations" can be pled.

In the third complaint, Vertical Bridge identifies four categories of leases[3] and also finally identifies sites on which it bases its allegations.  *See, e.g.*, *id.* ¶¶ 83–153.  It does not allege reasonable measures to maintain the supposed trade secrets with respect to any of these categories or sites.  We address each category in turn.

### 1.  Type One:  Vertical Bridge-Originated Leases with Confidentiality Provisions. (SAC ¶¶ 83–107).

All Vertical Bridge-originated leases start off as offers to landlords containing Vertical Bridge's "trade secret" rent terms, which were supposedly developed using Vertical Bridge's proprietary models.  *Id.* ¶¶ 58–60.  Vertical Bridge does not allege that any landlord has ever agreed to keep the terms of those offers confidential (with an NDA or otherwise).  *Id.* ¶¶ 83–94.  Instead, Vertical Bridge relies on the hollow allegation that it "designates offer letters to Landlords as 'Privileged and Confidential.'"  *Id.* ¶¶ 64(c), 85.  In fact, Vertical Bridge's third complaint makes matters even worse for Vertical Bridge by clarifying that in addition to sending its "trade secrets" to landlords in offer letters, it also includes those same terms in draft leases without any prior agreement to keep the terms secret.  *Id.* ¶ 85.

Vertical Bridge has no authority to unilaterally impose confidentiality on unrelated third parties during arms-length negotiations.[4]  *Cf.* May 23 Order at 20 n.14 (to the extent Vertical

---

[3] In the SAC, Vertical Bridge employs a different categorization than did the Court in its May 23 Order.

[4] In prior motion to dismiss briefing, Vertical Bridge invoked case law suggesting that in certain instances a person may be bound to confidentiality without an agreement.  As Everest previously explained, the cases are inapposite because employers have authority over their employees that Vertical Bridge does not have over unrelated landlords in arms-length

Bridge relies on a "request" to landlords to maintain confidentiality, the Court cannot infer a confidentiality *obligation*, as would be required to plausibly allege the existence of a trade secret). If Vertical Bridge actually believed that its rent terms were trade secrets, then it would treat them that way by obtaining NDAs before it shared them with unrelated third parties. Because it cannot allege NDAs, Vertical Bridge instead provides the Court with offer letters from Everest that contain confidentiality designations. SAC ¶¶ 75–76. The attempted "gotcha" is of no moment—Everest has never claimed that its own offers or rent terms are trade secrets. Indeed, Everest informed Vertical Bridge that there was no basis to file Everest's offer letters under seal and that the letters should be publicly filed. ECF # 52 at 6; ECF # 46-2 at 5 (email from Everest's counsel informing Vertical Bridge's counsel that "there's no basis to keep these materials under seal"). Everest knows that unilateral confidentiality designations do not constitute legally enforceable confidentiality *agreements* with landlords. *See* May 23 Order at 20 n.14. And it is curious that Vertical Bridge invokes and attaches Everest's offers to claim that Vertical Bridge's secrecy measures were reasonable, but, when it comes to the actual sites it identifies as being at issue, not only does Vertical Bridge fail to attach its own offer letters; it does not even allege that its offer letters on those particular sites were designated confidential.[5] SAC ¶¶ 89–107.

Hence, whether there are ultimately confidentiality provisions in the executed leases incorporating the supposedly trade secret offer terms makes no difference—by that point, the

---

transactions. ECF # 43 at 2, 5–6; *cf*. Roger M. Milgrim, 1 Milgrim on Trade Secret § 1.03[2] (2024) (distinguishing disclosure to employees from disclosure to unrelated third parties).

[5] Similarly, Vertical Bridge does not allege that its predecessors designated their offer letters confidential either generally or on the particular sites identified in the third complaint. SAC ¶¶ 113–22, 137–53.

horse had bolted, and Vertical Bridge's property right in any trade secret was "extinguished." *Ruckelshaus*, 467 U.S. at 1002; *see also SI Handling*, 753 F.2d at 1257 (no trade secret protection where information has "already [been] in the hands of third parties . . . who have every incentive,  and every right, to disclose it."); *see also Cole's Wexford Hotel, Inc. v. Highmark, Inc*., 2019 WL 3778090, at *13 (W.D.Pa. May 31, 2019) ("[I]f a party discloses its trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, [the party's] property right is extinguished." (quotation omitted)).  Vertical Bridge knows this; otherwise there was no need to allege on "information and belief" that "Landlords are aware of and understand that they had an obligation to keep the pricing terms of the leases confidential" "both before and after" confidentiality provisions were added to leases.  SAC ¶ 126.

In short, the face of the third complaint shows that Vertical Bridge does not take reasonable measures to maintain the secrecy of its supposed trade secrets.  *See* May 23 Order at 20 n.14.

### 2. Type Two:  Leases Acquired From Third Parties That Had Confidentiality Provisions From Inception  (SAC ¶¶108–22).

For Type Two, Vertical Bridge does not allege that its predecessors even *requested* that the landlord keep the terms of offers confidential, let alone that the landlords agreed to do so. *See* SAC ¶¶108–10.  Instead, Vertical Bridge relies entirely on an allegation based on its "understanding of industry practice" that Vertical Bridge's predecessors took unidentified measures to keep the terms a secret.  *Id*. ¶ 109.  Rather than plead the actual steps that any particular predecessor allegedly took to maintain the confidentiality of offers, Vertical Bridge "believes and understands the predecessors to have taken reasonable measures to safeguard and

protect the confidentiality of their financial information, including the measures described at ¶¶
60–62." *Id*.

The court need not credit this conclusory allegation. First of all, "allowance of pleading
upon information and belief has been held to be appropriate under the *Twombly* / *Iqbal* regime
only where the facts required to be pled are uniquely in the control of the ***defendant***." *Minielly
v. Acme Cryogenics, Inc.*, 2016 WL 1221640, at *7 (E.D. Pa. Mar. 28, 2016) (emphasis added).
Here, if anyone knows these facts, it should be Vertical Bridge, as the plaintiff asserting trade
secret protection over the pricing terms in its predecessors' lease agreements. Second, where
"information and belief averments are merely a formulaic recitation of the elements of a cause of
action" as they are here, "[r]eliance by [Plaintiff] on information and belief cannot transform
legal conclusions into plausible factual allegations." *Id*. (quotation omitted); *see also Oakwood
Labs.*, 999 F.3d at 904 (court must "disregard threadbare recitals of the elements of a cause of
action, legal conclusions, and conclusory statements" (quotation omitted)).

Moreover, paragraphs 60–62 do not identify any measures taken to maintain the
confidentiality of anything. Assuming that Vertical Bridge intended to assert that it "believes"
its predecessors took the steps listed in paragraphs 64–65 of the third complaint, those
allegations are no help. Paragraph 64 is a generic description of the measures Vertical Bridge
allegedly takes to prevent landlords from sharing its supposed trade secrets. SAC ¶ 64. These
fail for the same reason described above: Vertical Bridge does not allege any facts from which
the Court can possibly infer that landlords were *obligated* to maintain the confidentiality of
offers. *See supra* at 9–11; May 23 Order at 20 n.14. Paragraph 65 is irrelevant because it
concerns internal measures that Vertical Bridge supposedly uses to protect its alleged trade

secrets from its own employees.  Because Vertical Bridge alleges that Everest acquired the rent terms from landlords (not employees), these internal measures cannot support its claim.

### 3. Type Three:  Leases Acquired From Predecessors That Were Amended by Vertical Bridge to Incorporate Confidentiality Provisions (SAC ¶¶ 123–30).

The Court can and should ignore this category altogether because Vertical Bridge does not identify any instance where this has actually happened.  *See* SAC ¶¶ 123–30.  Additionally, any trade secret claims for Type Three fail for all of the reasons identified in Types One and Two above.

The third complaint's allegations regarding Type Three leases drive home the absurdity of Vertical Bridge's assertion that landlords have the same confidentiality obligations with respect to leases that have confidentiality provisions and those that do not.  According to Vertical Bridge, "[u]pon information and belief, and based on industry practice, both before and after the amendment the Landlords are aware of and understand that they had an obligation to keep the pricing terms of the Leases confidential, whether or not the Lease previously contained a confidentiality provision."  *Id*. ¶ 126.

The phrasing of this allegation exposes the folly of Vertical Bridge's attempt to salvage its claims.  To start, third party landlords operating at arms-length from Vertical Bridge cannot be "obligated" to maintain confidentiality in the absence of an *agreement* by those landlords to maintain confidentiality.  May 23 Order at 20 n.14.  And of course, any such *agreement* would have to be with Vertical Bridge, meaning Vertical Bridge would know if such an agreement existed.  Because there are no agreements, Vertical Bridge has resorted to an "information and belief" assertion that landlords had a unilateral "understanding" that they were "obligated" to maintain confidentiality when they (i) did not agree to do so and (ii) had no actual legal obligation to do so.  Vertical Bridge knows this is insufficient; otherwise it would not previously

13

have asked the Court to infer the existence of agreements it knows do not exist, something this Court refused to do. *See id.*

Even if this "information and belief" allegation were otherwise sufficient, the Court should disregard it because information about the landlords' subjective belief is *not* "uniquely in the control of" Everest. *Minielly*, 2016 WL 1221640, at *7. And Vertical Bridge does not provide any facts to support its legal conclusion that the landlords somehow "understood" they had confidentiality obligations in the absence of any agreement to maintain confidentiality, contractually or otherwise. *Iqbal*, 556 U.S. at 678; *Oakwood Labs.*, 999 F.3d at 904. Furthermore, it would be inappropriate to credit an alleged "industry practice" as imposing on the landlords a non-contractual confidentiality "obligation" to which they did not agree. SAC ¶ 126. Vertical Bridge concedes that the landlords are not even in the industry. *See* ECF #1 ¶ 20 ("Most Landlords are individuals or small businesses that do not have expertise in the telecommunications infrastructure industry."); ECF # 38 ¶ 26 (same).

### 4.  Type Four:  Leases That Never Had Confidentiality Provisions (SAC ¶¶ 131–53).

Vertical Bridge continues to maintain the frivolous position that leases without confidentiality provisions are entitled to trade secret protection. That is, of course, wrong. Vertical Bridge does not allege that any of these landlords have ever agreed to keep any of the supposed trade secrets a secret. Instead, Vertical Bridge again asserts that "[b]ased upon industry practice, Vertical Bridge believes and asserts that Landlords are aware of their obligation to keep the Vertical Bridge Trade Secret Information confidential, whether or not the Lease contains a confidentiality provision." *Id.* ¶ 133. For all of the reasons explained above, this legal conclusion should be ignored.

The Type Four leases have therefore been, and remain, in the hands of third parties with every right to share them whomever they wish, so they cannot contain trade secrets. *NOVA*

14

*Chems.*, 579 F.3d at 328 (information "lost its trade secret status" when it was included in license agreement that did not require confidentiality); *SI Handling*, 753 F.2d at 1257 (no trade secret protection where information has "already [been] in the hands of third parties . . . who have every incentive, and every right, to disclose it"); *Ruckelshaus*, 467 U.S. at 1002 ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished."); *see also Elias*, 2021 WL 2141509, at *6 (granting motion to dismiss trade secret claim and noting, "A prospective car-buyer is free to take a dealer's discounted price offer to a competitor in an attempt to obtain a more favorable deal.  Likewise, Plaintiff's customer's ability to disclose Plaintiff's pricing offer is essential to ensuring that the customer may negotiate freely and effectively in the market.").

Vertical Bridge is well aware that it cannot plausibly claim trade secret status for leases without confidentiality provisions; otherwise it would not (supposedly) amend leases it acquires to incorporate those provisions (which would convert them into Type Three).  *See* SAC ¶¶ 123–30.  Given that Vertical Bridge previously claimed to do so "[w]henever possible," (ECF # 38 ¶ 29), the Court can only infer that it was *not* possible to incorporate those provisions for these Type Four leases, presumably because the landlords refused.  Not surprisingly, with respect to the actual examples that Vertical Bridge attached for this category, Vertical Bridge does not allege that any landlord *agreed* to keep these terms a secret or plead any other facts from which the court can infer that they did.  SAC ¶¶ 137–53.

The May 23 Order was clear about what would be required to adequately allege secrecy in this case, and the third complaint is equally clear that Vertical Bridge cannot do it.  The claims should be dismissed with prejudice.

## II. THE TRADE SECRET CLAIMS MUST BE DISMISSED BECAUSE THE SUPPOSED TRADE SECRETS ARE READILY ASCERTAINABLE BY PROPER MEANS.

Everest previously explained that Vertical Bridge's rent terms cannot be trade secrets because according to Vertical Bridge's own allegations they are readily available via permissible means. *See* ECF # 21 at 14–15; ECF # 41 at 14–15; *see also* 18 U.S.C. § 1839(3)(B) (no trade secret where information is "readily ascertainable through proper means by, another person"); 12 Pa. Cons. Stat. § 5302 (same). The first two complaints alleged that "legitimate" aggregators purchased interests in ground leases from landlords without knowing the value of the stream of rental income they were acquiring. ECF # 1 ¶ 33 ("Legitimate tower aggregators offer landowners lump-sum payments that are a fraction of the expected total rental revenue, based on the tower aggregator's estimation of market rent and utilizing a market-determined multiple") *and* ECF # 38 ¶ 48 (same). As Everest showed, those "legitimate" aggregators learn the rent (and permissibly ascertain the alleged trade secrets) when the rent checks came in from Vertical Bridge. *See* ECF # 21 at 14–15; ECF # 41 at 14–15. The purported trade secrets are, therefore, "readily ascertainable through proper means." 18 U.S.C. § 1839(3)(B).

In the third complaint, Vertical Bridge goes a step further. It jettisons the never-believable allegation that other tower aggregators purchase interests in towers without seeing the rent terms. *See* SAC ¶¶ 69–71; *supra* at 4–5. In other words, it no longer draws a distinction between "legitimate" and illegitimate aggregators. In the third complaint, there are only "aggregators," and the only difference between Everest and the other aggregators is that Everest is a "tower company." *Id*. at ¶¶ 69–79. But whether Everest is a tower company has no bearing on whether Vertical Bridge's rent terms are trade secrets. If the other aggregators are "legitimate" (as Vertical Bridge has twice alleged, *see* ECF # 1 ¶ 33; ECF # 38 ¶ 48), then so is Everest. To put it another way: Vertical Bridge not only alleges that the rent terms are readily

ascertainable by proper means; it now alleges that *the exact same means are legitimate when performed by a different aggregator*.

One point to clarify:  The Court noted in its May 23 Order that it was unconvinced by Everest's prior argument that "legitimate" aggregators obtain the exact same information as Everest after closing, stating "the reality that a *VB Plaintiff's agreement with another aggregator* might give that tower aggregator access to such information would not necessarily destroy trade secret protection."  May 23 Order at 22 n.15 (emphasis added).  Respectfully, Vertical Bridge never alleged agreements between VB Plaintiffs and "legitimate" aggregators.  To the contrary, Vertical Bridge alleged that the "legitimate" aggregators reach agreements with *landlords* (just like Everest does).  *See* ECF # 41 at 14–15.  Those "legitimate" aggregators then learn the "trade secrets" when, pursuant to their agreement with the landlords, they receive the rental stream from Vertical Bridge.  Everest respectfully submits that because the agreements at issue are between "legitimate" aggregators and the landlord (not a Vertical Bridge plaintiff), the trade secret claims fail because a "legitimate" aggregator can properly obtain the supposed trade secrets without any consent or involvement of Vertical Bridge.

There are no trade secrets.  The claims must be dismissed.

## III. THE STATE LAW CLAIMS MUST BE DISMISSED ON THE SAME GROUND AS THE TRADE SECRET CLAIMS

In the May 23 Order, the Court dismissed Vertical Bridge's remaining state law claims because they were "predicated on the same alleged conduct" as the dismissed trade secret claims and Lanham Act claims.  May 23 Order at 23.  That has not changed in the third complaint.  Vertical Bridge's claims for unjust enrichment, tortious interference, and unfair competition are all based on the same alleged conduct as the trade secret misappropriation claims and rely on the

same "confidential, proprietary financial information" as the trade secret claims, and must be dismissed for the same reasons:

- **Unjust Enrichment (Count III):**  Relies on allegations that "Everest appreciated the benefit of Vertical Bridge's ***confidential, proprietary financial information*** by using that information to negotiate with Vertical Bridge's Landlords under more favorable terms and thereby obtain a competitive advantage against Vertical Bridge."  SAC ¶ 208 (emphasis added);

- **Tortious Interference with Existing and Prospective Contractual Relations (Counts IV and V):**  Relies on allegations that "Everest intentionally interferes with the contractual relationships between Vertical Bridge and its Landlords" by inducing "the Landlords to disclose Vertical Bridge's ***confidential, proprietary financial information*** in violation of the Landlords' confidentiality obligations to Vertical Bridge" (*id.* ¶ 215 (emphasis added)) and that "Everest intentionally interferes with Vertical Bridge's prospective contractual relationships by using the wrongfully obtained ***confidential, proprietary financial information*** to negotiate with Vertical Bridge's Landlords under more favorable terms and thereby obtain a competitive advantage against Vertical Bridge."  *Id.* ¶ 231 (emphasis added); and

- **Unfair Competition (Count VI):**  Relies on the allegation that "[u]pon information and belief, Everest uses and intends to continue to use Vertical Bridge's ***confidential, proprietary financial information*** in order to gain an unfair competitive advantage over Vertical Bridge."  *id.* ¶ 240.  Also relies on an allegation that "Everest uses and intends to continue to use Vertical Bridge's ***confidential, proprietary financial information*** to interfere with existing and prospective Leases."  *Id.* ¶ 241 (emphasis added).

Because all of these claims rely on the same information and underlying conduct as Vertical Bridge's trade secret misappropriation claims, they "rise or fall" with those underlying claims, and must be dismissed for the same reasons set out above.  *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 493–94 (E.D. Pa. 2016) (dismissing unjust enrichment claim where underlying tort claim was dismissed); *see also Pittsburgh Logistics Sys., Inc.*, 2021 WL 811394, at *7 (dismissing unjust enrichment claim where it was premised on inadequately pled violation of a restrictive covenant); *Shire US, Inc. v. Allergan, Inc.*, 375 F. Supp. 3d 538, 558 (D.N.J. 2019) (dismissing tortious interference claim premised on insufficiently alleged anticompetitive activity); *Hirtle Callaghan Holdings, Inc. v. Thompson*, 2022 WL 2048656, at *8 (E.D. Pa. June

7, 2022) (dismissing unfair competition claim where it was premised on underlying claims that were dismissed).

## IV. IF ANY CLAIMS ARE NOT DISMISSED UNDER RULE 12(B)(6), THEN THEY MUST BE DISMISSED UNDER TO RULE 12(B)(7) FOR FAILURE TO JOIN THE LANDLORDS AS NECESSARY PARTIES

The core of Vertical Bridge's trade secret claim is that unidentified landlords breached their confidentiality obligations owed to Vertical Bridge by disclosing lease terms to Everest. The Court cannot issue a judgment against Everest absent a predicate finding that Vertical Bridge's landlords (i) owed such obligations, and (ii) breached them. And with respect to some of the leases, the Court would have to hold such confidentiality obligations existed even where there are no confidentiality provisions in the leases or separate agreements by the landlords to maintain confidentiality—but instead should be inferred from "industry practice" of an industry that the landlords are not in, and even where Vertical Bridge tried (and failed) to add a confidentiality provision. *See supra* at 13–15. The implications of such a finding for Vertical Bridge's landlords are substantial, and it cannot be made without giving them a full and fair opportunity to be heard. *See* ECF # 41 at 16–17. For the avoidance of doubt, the Court can, and should, dismiss all of the claims with prejudice pursuant to Rule 12(b)(6) without the landlords being present. That holding would not require any determination of the landlords' contractual rights and duties or property interests, and thus does not implicate any interests of the landlords under Rule 19(a)(1)(B). But to the extent that the Court does not dismiss the claims in full under Rule 12(b)(6), then it should dismiss them under Rule 12(b)(7) for failure to join necessary parties.

Rule 19 of the Federal Rules of Civil Procedure governs the joinder of required parties. As relevant here, "required" parties include any person who "claims an interest relating to the subject matter of the action and is so situated that disposing of the action in the person's absence

*may . . . as a practical matter* impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i) (emphasis added).  All required parties must be joined, if feasible.  *See id.*  Where joinder is infeasible, the Court must determine whether "the action should proceed among the existing parties or should be dismissed," considering the factors laid out in Rule 19(b).  To facilitate that inquiry, it is the plaintiff's burden to plead "the reasons for not joining" a required party.  Fed. R. Civ. P. 19(c)(2).

Here, the Vertical Bridge landlords are required parties whose nonjoinder compels dismissal.  To start, each landlord has interests in both the contracts and the property that are essential to Vertical Bridge's claims.  The landlords are parties to, and are alleged to have violated, the leases (not to mention additional inchoate "obligations" not contained in the leases but that nevertheless supposedly govern disclosure of lease terms).  *See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 233 (3d Cir. 2023) ("parties owning rights under disputed contracts . . . generally have a legally protected interest under Rule 19(a)(1)(B)(i)").  And, of course, the landlords hold a property interest in the land subject to those leases.

These interests are sufficient to trigger the protections of Rule 19.  As Vertical Bridge has pleaded its claims, each of the landlords is "a crucial and active participant in the very transaction which [Vertical Bridge] claime[ed] trigger[ed] [Everest's] liability."  *Glades Pharms., LLC v. Call, Inc.*, 2005 WL 563726, at *4 (E.D. Pa. Mar. 9, 2005) (internal marks omitted).  According to Vertical Bridge, its landlords' confidentiality obligations are what keep its alleged trade secrets a "secret."  Thus, the Court will need to "adjudicate [each landlord's] rights along with those of plaintiff and defendant in order to resolve the matter in dispute."  *Id.*  The outcome will be rulings on the extent to which the landlords owe duties of confidentiality to

Vertical Bridge, (*see* May 23 Order at 20 n.14), and breached those duties by sharing rental terms with Everest and other parties.

These rulings will have real-world consequences for Vertical Bridge's landlords.  For example, Vertical Bridge alleges that because the owner of the Morehead site agreed to a confidentiality provision, it cannot sell its property unless it finds a buyer willing to purchase it without knowing the income stream that comes from the tower.  *See* SAC ¶¶ 101–07.  That hurts the owner in two ways:  (1) it necessarily shrinks the pool of buyers; and (2) a buyer who is willing to make that purchase with the rent amount unseen might pay less to account for the risk that the rent will be lower than expected.  But—stranger still—Vertical Bridge also alleges that owners of the Beaver Lake and Custar sites are somehow bound to keep that critical valuation information a secret ***even though those leases do not have confidentiality provisions***.  *Id.* ¶¶ 137–53.  And imagine the surprise of landlords who refused to amend a lease to add a confidentiality provision when Vertical Bridge took over the lease (*see Id.* ¶¶ 131–36; *supra* at 15), but are now held to one anyway in an out-of-state litigation where they had no opportunity to defend their interest.  These severe restrictions on the alienability of the landlords' property is an interference requiring their joinder as parties.

In short, Vertical Bridge is asking this Court to adjudicate the rights of Vertical Bridge landlords whose contractual and property interests are at the core of this dispute without ever hearing from the landlords themselves.  Courts routinely dismiss complaints in similar circumstances.  *See Glades Pharms.*, 2005 WL 563726, at *4 (dismissing complaint where resolution of claim non-party contractual obligations that were "central" to the dispute); *Lessel, Winkle, Yard, Inc. v. Advanced Telecommunications Network, Inc.*, 1994 WL 263322, at *3 (E.D. Pa. June 10, 1994) (dismissing complaint where resolution of claim would have required

court to determine whether nonparty shareholders breached asset purchase agreement); *Hearing Lab Tech., Inc. v. Hearing Instruments, Inc.*, 2017 WL 3208676, at *3 (W.D. Pa. July 27, 2017) (dismissing complaint where claims required court to adjudicate nonparties' employment agreements); *Spice Jazz LLC v. Youngevity Int'l, Inc.*, 2019 WL 4573705, at *3 (S.D. Cal. Sept. 19, 2019) (dismissing complaint that would have required court to determine validity of nonparty's contract rights).  This Court should do the same.

## <u>CONCLUSION</u>

Vertical Bridge's latest attempt to fix its complaint only highlights that it never had any claims against Everest in the first place; this litigation is just a baseless attempt to intimidate a competitor and chill legitimate market activity.  The Court should dismiss all of Vertical Bridge's claims with prejudice pursuant to Rules 12(b)(6) and 12(b)(7).


Dated:  June 20, 2024                                   Respectfully submitted:


                                                       */s/ Andrew R. Stanton*
                                                       **JONES DAY**
                                                       Andrew R. Stanton (Pa. 93409)
                                                       Jeffrey Baltruzak (Pa. 318156)
                                                       Susan Kessler (Pa. 322558)
                                                       500 Grant Street, Suite 4500
                                                       Pittsburgh, Pennsylvania 15219
                                                       (412) 391-3939
                                                       astanton@jonesday.com
                                                       jbaltruzak@jonesday.com
                                                       skessler@jonesday.com

                                                       *Attorneys for Defendants Everest Infrastructure Partners, Inc. and EIP Holdings II, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum of Law in Support of Everest's Motion to Dismiss the Second Amended Complaint was served on counsel of record via the United States District Court for the Western District of Pennsylvania's CM/ECF system.


*/s/ Andrew R. Stanton*
*Attorney for Defendants Everest*
*Infrastructure Partners, Inc. and EIP*
*Holdings II, LLC*