IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VERTICAL BRIDGE REIT, LLC; VERTICAL BRIDGE NTCF, LLC; VERTICAL BRIDGE DEVELOPMENT, LLC; VERTICAL BRIDGE TOWERS, LLC; ECO-SITE, LLC; VB RUN, LLC; CIG COMP TOWER, LLC; VB BTS, LLC; VERTICAL BRIDGE 500, LLC; MIDWEST NT 1 LLC; MIDWEST NT 2, LLC; VERTICAL BRIDGE VBTS, LLC; VB BTS II, LLC; VERTICAL BRIDGE S3 ASSETS, LLC; VB-S1 ASSETS, LLC; THE TOWERS, LLC; VERTICAL BRIDGE CC FM, LLC; VERTICAL BRIDGE CCR, LLC; VB NIMBUS, LLC; VERTICAL BRIDGE CC AM, LLC; VOGUE XIII, LLC; VERTICAL BRIDGE REAL ESTATE, LLC; PRECISION CELL ASSETS, LLC; TORO VERTICAL, LLC; BRIDGER CELL ASSETS, LLC; VBHV, LLC; DATAPATH VERTICAL BRIDGE II, LLC; NTCH-VB, LLC; VERTICAL BRIDGE TOWERS IV, LLC; VBT SUB 2, LLC, *Plaintiffs*, v. EVEREST INFRASTRUCTURE PARTNERS, INC.; EIP HOLDINGS II, LLC, *Defendants*. | No. 2:23-cv-1017-WSH |

**DECLARATION OF ROBERT PAIGE
IN SUPPORT OF PLAINTIFFS' MOTION TO SEAL**

I, Robert Paige, declare as follows:

1. I am over the age of eighteen (18), and I have personal knowledge of the facts set forth herein. I would and could testify to these facts if called upon to do so in a court of law.

2. I am a founding member of, and the Executive Vice President of Mergers and Acquisitions for, Vertical Bridge REIT, LLC, one of the plaintiffs in the above-captioned action

1

who is also the parent company of all the other plaintiff entities (collectively, "Vertical Bridge"). I have worked at Vertical Bridge since its founding in 2014. I submit this Declaration in Support of Vertical Bridge's Motion to Seal.

3. Vertical Bridge is the largest privately-owned tower company in the United States, and the fourth largest overall as measured by the number of owned/operated tower sites.

4. I have more than 35 years of experience in the telecommunications industry. In addition to my present position at Vertical Bridge, I currently serve on the board of Boingo Wireless.

5. In my position at Vertical Bridge, my responsibilities include, but are not limited to, managing all acquisitions, including the acquisition of wireless telecommunications infrastructure including tower assets.

6. Through my current work and my decades of experience in the telecommunications industry (referred to colloquially as the "tower industry"), I am familiar with and have extensive knowledge of the industry custom and practice with respect to ground leases and licenses between tower companies and the owners of the real property on which the towers are situated, including the economics of such leases.

7. Through my current work and my decades of experience in the tower industry, I am familiar with and have extensive knowledge of the industry custom and practice with respect to leases between tower companies and their tenants, such as the national cellular carriers.

8. As part of their business practices, tower companies regularly compete with one another for towers and telecom tenants. The more towers a company acquires, the more tenants it is able to support, and the more revenue it can obtain from tenant rent. The number of towers a tower company can acquire, and therefore a tower company's profitability, is in part a function

of a tower company's ground lease costs, which can include ground lease rent, license fees, and sharing of tenant rental revenue with ground lease/license landlords.

9. The financial arrangements between tower companies and their landlords involve the tower company paying rent or a license fee to the landlord, either on a monthly or annual basis, typically with periodic increases over time. Sometimes, in addition to rent or a license fee, the tower company also pays a share of the revenue that the tower company receives from its telecom tenants. By way of shorthand, these financial arrangements are collectively referred to as "financial" information or "financials".

10. The financials with respect to any particular ground lease is a function of multiple factors and can vary widely from site to site even within the same general geographic area. These factors include topography, proximity to other towers, orientation with respect to residential or commercial areas, proximity to large man-made or natural structures, FAA regulations, FCC regulations, state and local regulations, zoning ordinances, local and national real estate market conditions, the types and number of telecom tenants who can feasibly operate from the tower, and market predictions.

11. It is tower industry practice to maintain the secrecy of ground lease financial information as much as possible, and to keep such information from competitors.

12. Tower companies, to the best of their ability, diligently guard the secrecy of the individual site-to-site ground lease financial information, the financial information across their collective tower portfolio, and the financial models that are used to develop both individual and portfolio financials. In my experience, this is true of every tower company with which I am personally familiar, including Vertical Bridge and the Everest defendants in this case.

13. Vertical Bridge keeps its financial information secret to the fullest extent possible, including the financial information set forth in Vertical Bridge's ground leases attached to its Second Amended Complaint, and takes reasonable measures to prevent disclosure of this information.

14. Vertical Bridge uses its confidential financial information to contract with landlords to obtain access to real property on which to put its towers, and thereafter Vertical Bridge derives revenue from subleases on those towers to its tenants. As such, the information has independent economic value to Vertical Bridge.

15. The financial information likewise would have independent economic value for competitors if they were to obtain this confidential financial information, as it would allow competitors to unfairly undercut Vertical Bridge by negotiating with landlords knowing the precise terms of existing ground leases.

16. Vertical Bridge's financial information is not generally known to the public or readily accessible by the public using proper means, and derives independent value from not being generally known to the public.

17. Vertical Bridge does not disclose its financial information to anyone other than its landlords to whom this information applies. Absent limited circumstances, Vertical Bridge does not even disclose its ground lease financials to Vertical Bridge's own telecom tenants that are operating from the tower subject to each ground lease. In those limited circumstances where Vertical Bridge does disclose the financials with its tenants, that disclosure is subject to contractual confidentiality requirements. In all other scenarios, Vertical Bridge redacts its financial information from its ground leases before providing a copy of the leases to telecom tenants as part of Vertical Bridge's sublease with the telecom tenants.

18. For an extra measure of safety, Vertical Bridge incorporates confidentiality provisions into ground leases that prohibit landlords from disclosing the financial terms of their leases to third parties without Vertical Bridge's consent.

19. In my experience, tower companies generally add the extra measure of safety of a confidentiality provision in a ground lease or license where possible. However, this is just one measure among many that tower companies use to maintain the secrecy of their ground lease/license financial information.

20. For example, Vertical Bridge and all other tower companies of which I am aware routinely take steps to ensure that all confidential financial information is specifically redacted in all publicly recorded memoranda of lease to the fullest extent allowed by law.

21. The measures Vertical Bridge takes to keep its financial terms a secret are, based on my decades of experience, consistent with those taken by tower companies throughout the industry.

22. Vertical Bridge takes such measures to maintain the secrecy of its financial information because disclosure of Vertical Bridge's financial information contained in the ground leases to third-party competitors would substantially impair Vertical Bridge's commercial advantage in the highly competitive tower industry.

23. In view of the foregoing, disclosure of Vertical Bridge's financial information that it seeks to redact from the leases attached to its Second Amended Complaint would work a clearly defined and serious injury to Vertical Bridge.

///

///

DATED: 6/20/2024 _____

DocuSigned by:

*Robert Paige*

Robert Paige

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.