# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VERTICAL BRIDGE REIT, LLC,
VERTICAL BRIDGE CCR, LLC,  VBHV,
LLC,  VB-S1 ASSETS, LLC,  NTCH-VB,
LLC,  BRIDGER CELL ASSETS, LLC,
ECO-SITE, LLC,  MIDWEST NT 1 LLC,
DATAPATH VERTICAL BRIDGE II, LLC,
VB NIMBUS, LLC,  VB RUN, LLC,
VERTICAL BRIDGE TOWERS IV, LLC,
TORO VERTICAL, LLC,  VERTICAL
BRIDGE NTCF, LLC,  PRECISION CELL
ASSETS, LLC,  VERTICAL BRIDGE
DEVELOPMENT, LLC,  VBT SUB 2, LLC,
VERTICAL BRIDGE CC FM, LLC,
VOGUE XIII, LLC,  THE TOWERS, LLC,
VERTICAL BRIDGE CC AM, LLC,  VB
BTS II, LLC,  CIG COMP TOWER, LLC,
VERTICAL BRIDGE TOWERS, LLC,
VERTICAL BRIDGE VBTS, LLC,
MIDWEST NT 2, LLC,  VERTICAL
BRIDGE S3 ASSETS, LLC,  VERTICAL
BRIDGE REAL ESTATE, LLC,
VERTICAL BRIDGE 500, LLC,  VB BTS,
LLC,

          Plaintiffs,

      v.

EVEREST INFRASTRUCTURE
PARTNERS, INC.,  EIP HOLDINGS II,
LLC,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 23-1017

## <u>MEMORANDUM OPINION</u>

Presently before the Court are Defendants' Motion to Dismiss Plaintiffs' Second Amended

Complaint ("SAC") for Failure to State a Claim (Docket No. 53), Plaintiffs' Unopposed Motion

for Oral Argument (Docket No. 59), and the parties' briefs in support of and in opposition to the

pending motion to dismiss (Docket Nos. 54, 57-58).  For the reasons set forth herein, the Court will **<u>DENY</u>** Plaintiffs' motion for oral argument[1] and **<u>GRANT IN PART AND DENY IN PART</u>** Defendants' motion to dismiss.

## I.    <u>BACKGROUND</u>[2]

This case involves tower companies competing in the telecommunications infrastructure industry.  (Docket No. 48, ¶ 1).  Vertical Bridge REIT, LLC and its subsidiaries (hereinafter the "VB Plaintiffs") own and operate towers and lease space on those towers to telecommunications tenants.  (*Id.* ¶ 56).  The towers they own and operate usually sit on leased property, and the VB Plaintiffs' ground-lease agreements with individual landlords (collectively referred to herein as the "Landlords") are based on "Vertical Bridge's proprietary financial model, and other similar financial information," which, together, constitutes what the VB Plaintiffs refer to as "Vertical Bridge Trade Secret Information."  (*Id.* ¶¶ 60-62).  The Everest Defendants are alleged to be in business as a tower company that is additionally engaged in tower aggregation, meaning that the Everest Defendants seek to be middlemen between the Landlords and tower companies like the VB Plaintiffs.  (*Id.* ¶ 72).  Tower aggregators "assume[] [a] landowner's interests in its ground lease with the tower company and receive[] the monthly rent payments that the company would have made to the landowner."  (*Id.* ¶ 70).

The VB Plaintiffs allege that tower aggregation can be legitimate, but they further allege that the Everest Defendants engage in "an extreme form of tower aggregation" that is illegitimate.

---

[1]    This Court has broad discretion under Fed. R. Civ. P. 78(b) to rule on motions like the now-pending motion to dismiss without oral argument.  *Rose v. Bartle*, 871 F.2d 331, 340 n. 4 (3d Cir. 1989).  This Court previously heard argument in this case on January 9, 2024, and while the VB Plaintiffs indicate that the Court would be assisted by argument in resolving the issues presented, it is the Court's determination that the parties have adequately presented their arguments in the briefs.  Therefore, the Court will not hold argument because it would not be an effective use of judicial resources at this time.

[2]    The Court's summation of the facts of this case is drawn from the SAC.

(*Id.* ¶ 72).  According to the VB Plaintiffs, the Everest Defendants have "induced … Vertical Bridge's Landlords … to share valuable, proprietary, and confidential financial information in their Ground Leases with Everest" in furtherance of their illegitimate tower aggregation scheme. (*Id.* ¶ 78).

The VB Plaintiffs first sought to stop the Everest Defendants' tower aggregation before this Court when Vertical Bridge REIT, LLC filed its initial complaint on June 8, 2023.  (Docket No. 1).  The Everest Defendants moved to dismiss that initial complaint (Docket No. 20), and the Court thereafter set oral argument for January 9, 2024.  (Docket No. 31).  At the conclusion of oral argument, the Court granted the Everest Defendants' motion for the reasons stated on the record that day, and dismissed Vertical Bridge REIT, LLC's initial complaint without prejudice for failure to prosecute in the name of the real parties in interest pursuant to Rule 17.  (Docket No. 36).  In response to that ruling, Vertical Bridge REIT, LLC added its subsidiaries as parties, and the VB Plaintiffs filed a First Amended Complaint.  (Docket No. 38).  The Everest Defendants moved to dismiss the claims therein.  (Docket No. 40).  The Court granted that motion without prejudice for the reasons stated in its May 23, 2024, Memorandum Opinion.  (Docket Nos. 44, 45).  In its Memorandum Opinion, the Court explained, *inter alia*, that: the VB Plaintiffs' Lanham Act claim lacked factual allegations of literally false or literally-true-but-deceptive statements; the VB Plaintiffs' trade secret misappropriation claims lacked sufficient detail to determine what information they sought to protect and whether they had been secretive enough with respect to such information to avail themselves of trade-secret protection; and the VB Plaintiffs' remaining claims were premised on allegations of confidentiality that were too conclusory to be treated as well-pleaded facts in support of those claims. *Vertical Bridge REIT, LLC v. Everest Infrastructure*

*Partners, Inc.*, No. CV 23-1017, 2024 WL 2392896 (W.D. Pa. May 23, 2024); Memorandum Opinion (Docket No. 44).

The VB Plaintiffs thereafter sought to cure the deficiencies that the Court identified in the First Amended Complaint ("FAC") in their SAC.  (Docket No. 48).  In the SAC, the VB Plaintiffs continue to pursue their state and federal misappropriation of trade secret claims, as well as their unjust enrichment, tortious interference, and unfair competition claims, but they have abandoned their prior Lanham Act claim.  (*Id.*).  The Everest Defendants now move to dismiss the claims in the SAC with prejudice, arguing that the VB Plaintiffs have failed to cure fundamental shortcomings of their pleadings in this, their third attempt to adequately allege trade secret and related claims.  (Docket No. 53, 54, 58).  The Everest Defendants further argue that *even if* the VB Plaintiffs' allegations in the SAC are finally adequate under prevailing pleadings standards, the Court should dismiss this case because required parties are absent.  The VB Plaintiffs oppose the motion (Docket No. 57) and urge this Court to deny it in its entirety.  The matter is ripe for disposition.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), the Court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555).  This standard does not require "detailed factual allegations," but it does "demand[] more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has explained that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). The Court accepts all such factual allegations as true, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Rule 12(b)(7) addresses failure to join a person that must be joined under Rule 19, and the standard for Rule 12(b)(7) motions is very similar to the 12(b)(6) standard. In *Rabner v. Titelman*, the Honorable Nora Barry Fischer succinctly articulated the standard applicable to 12(b)(7) motions:

> In reviewing this type of motion, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. However, evidence outside the pleadings may be considered by the Court. The moving party bears the burden of showing that a nonparty is both necessary and indispensable. If joinder of an indispensable nonparty is not feasible because the addition of the party would defeat diversity jurisdiction, the case must be dismissed.

No. 15-1313, 2016 WL 1613444, at *4 (W.D. Pa. Apr. 22, 2016) (cleaned up). The Court addresses the considerations relevant to Rule 12(b)(7) in greater detail herein.

## III. **DISCUSSION**

In support of the motion to dismiss, the Everest Defendants argue that the Court should dismiss the VB Plaintiffs' trade secret claims with prejudice because the VB Plaintiffs still have

not managed to allege facts showing that their purported trade secrets are, in fact, kept secret.  The Everest Defendants also argue that the VB Plaintiffs' state law claims are inadequately alleged, and they further argue that—even if the VB Plaintiffs' pleadings are found to be adequate—this case should be dismissed because the Landlords are absent.  The VB Plaintiffs counter that they have adequately alleged secrecy for trade-secret claims, their unjust enrichment/tortious interference/unfair competition claims are independently viable and adequately alleged, and the Landlords are merely joint tortfeasors with the Everest Defendants who need not be joined.  The Court addresses these arguments herein, starting with the VB Plaintiffs' misappropriation of trade secrets claims.

A.    Rule 12(b)(6) and Misappropriation of Trade Secrets

The VB Plaintiff's trade-secret claims arise under federal and state law: the Defend Trade Secrets Act ("DTSA") and Pennsylvania Uniform Trade Secrets Act ("PUTSA").  The DTSA and PUTSA are "substantively similar." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 381 n. 19 (3d Cir. 2021).  Accordingly, courts—this one included—have found it appropriate to consolidate consideration of DTSA and PUTSA claims into one analysis.  *Id.* (citing *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018)); Memorandum Opinion (Docket No. 44) at 16.  The elements of trade secret misappropriation are:

> (1) the existence of a trade secret, defined generally as information with independent economic value ***that the owner has taken reasonable measures to keep secret***; (2) that 'is related to a product or service used in, or intended for use in, interstate or foreign commerce'; and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret.

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (citing 18 U.S.C. §§ 1839(3), 1836(b)(1), 1839(5)) (emphasis added).  A trade secret may consist of "any formula, pattern,

device or compilation of information which is used in one's business, and which gives [the business owner] an opportunity to obtain an advantage over competitors who do not know or use it." *123 Exteriors, Inc. v. N. Star Exteriors, LLC*, No. CV 17-4337, 2018 WL 3642221, at *7 (E.D. Pa. Aug. 1, 2018) (quoting *Kewanee Oil v. Bicron Corp.*, 416 U.S. 470, 475 (1974)). To state a plausible trade-secret misappropriation claim, a plaintiff must "sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such." *Mallet & Co..*, 16 F.4th at 380-81 (citing 18 U.S.C. §§ 1836(b), 1839(3)); *Cole's Wexford Hotel, Inc. v. Highmark, Inc.*, No. 2:10-CV-01609-JFC, 2019 WL 3778090, at *13 (W.D. Pa. May 31, 2019) ("A party claiming rights to a trade secret bears the burden of defining the information for which protection is sought with sufficient definiteness to permit a court to apply the criteria for protection."); *Oakwood Lab'ys LLC*, 999 F.3d at 906.

The last time that the VB Plaintiffs attempted to articulate plausible trade-secret misappropriation claims, they failed to provide sufficiently detailed factual allegations about their alleged trade secrets. Evaluating the allegations that appeared in the FAC, the Court explained that it was difficult to tell what exactly the VB Plaintiffs sought to protect. Memorandum Opinion (Docket No. 44) at 19 ("The VB Plaintiffs generally allege that their pricing terms, price structure information, escalator amounts, and timing constitute trade secret(s) … [b]ut beyond those vague allegations … it is unclear," *inter alia*, "whether the information in question is solely the price of rent."). From the FAC, it was also difficult to determine "whether the same price-term and price-structure information the VB Plaintiffs [were seeking] to protect … was disclosed in predecessor-in-interest contracts that lacked any confidentiality provision (even if the contract was later amended to include a confidentiality clause), or whether the information in question was disclosed in offer letters to landlords without any non-disclosure agreement in place." *Id.* at 19-20.

Now, in the SAC, the VB Plaintiffs' allegations are more specific. In the SAC the VB Plaintiffs allege that their trade-secret protected information includes site-specific rent amounts, licensing fees, escalator amounts, and rent sharing from tower tenants, all of which is developed with the VB Plaintiffs' proprietary financial model and is specific to a particular site. (Docket No. 48, ¶¶ 58, 61). This answers the question previously posed by the Court of whether the VB Plaintiffs' prior reference to pricing terms and related information referred solely to the amount of rent paid by the VB Plaintiffs to the Landlords. And because "[c]ustomer lists, pricing information, and marketing techniques may constitute a trade secret," the Court is satisfied that this information is the kind of information that could constitute trade secrets, and that it is defined with enough specificity for the Everest Defendants to determine which information the VB Plaintiffs are targeting for protection in this suit. In addition to more specifically identifying the information in question, the VB Plaintiffs' allegations in the SAC indicate that this information has independent economic value insofar as its disclosure gives competitors an advantage in undercutting the VB Plaintiffs' leases with Landlords when this information is known, whereas maintaining its secrecy gives the VB Plaintiffs an advantageous edge. (Docket No. 48, ¶ 169).

Before the Court determines that the VB Plaintiffs have plausibly alleged protectable trade secrets, the Court must additionally ask whether the VB Plaintiffs have alleged that they have taken reasonable measures to safeguard their trade-secret protected information, *i.e.*, whether they have been secretive enough for the information in question to be a trade secret. *Nova Chemicals, Inc. v. Sekisui Plastics Co.*, 579 F.3d 319, 327-28 (3d Cir. 2009) ("The most important characteristic of a trade secret is that it is in fact secret." (quoting James Pooley, Trade Secrets § 4.04 (2009))). In assessing whether the VB Plaintiffs have adequately alleged that they took reasonable measures to preserve secrecy, the Court bears in mind that this question is, generally, "a question of fact."

*Elmagin Cap., LLC v. Chen*, 555 F. Supp. 3d 170, 179 (E.D. Pa. 2021); *Tristar Invs., Inc. v. Am. Tower Corp.*, No. 3:12-CV-0499-M, 2014 WL 1327663, at *7 (N.D. Tex. Apr. 3, 2014). That, of course, does not mean that the Court's review of alleged reasonable measures is toothless on a motion to dismiss, and the VB Plaintiffs cannot expect to survive such review with threadbare allegations of secrecy. What it means is that this Court exercises "caution" in its review of the pleadings. *Howmedica Osteonics Corp. v. Howard*, No. 19-19254 (EP) (AME), 2022 WL 16362464, at *17 (D.N.J. Oct. 28, 2022). To be "*protectable* … under the DTSA, a plaintiff must take 'reasonable measures to keep such information safe.'" *Id.* (quoting 18 U.S.C. § 1839(3)(A)) (emphasis in original). This Court has previously explained that trade secret protection requires that the holder took reasonable protective measures—not perfect ones—*i.e.*, "not all disclosures will destroy a trade secret." <u>Memorandum Opinion</u> (Docket No. 44) at 22 n. 15 (quoting *Nova Chemicals, Inc.*, 579 F.3d at 328); *Houser v. Feldman*, 569 F. Supp. 3d 216, 230 n. 7 (E.D. Pa. 2021) ("Courts in this circuit have generally only dismissed DTSA claims on this ground where there are plain allegations that the owner made its own trade secrets public.").

The VB Plaintiffs allege that they have taken reasonable measures to keep their trade secret information secure in that they: provide trade secret information only to the Landlords to whom the information pertains, redacting it in communications with others, *e.g.*, in copies of leases that are provided to tower tenants; incorporate confidentiality provisions into lease agreements; designate offer letters as "Privileged and Confidential"; and redact trade-secret protected information from public documents. (Docket No. 48, ¶¶ 64(a)-(d)). The VB Plaintiffs also allege that they employ internal protections to keep their trade-secret information from being disclosed. (*Id.* ¶ 65). The VB Plaintiffs further allege that there are several different types of leases that they have executed with Landlords, the differentiation among the types of leases being primarily

dependent on the context in which a particular VB Plaintiff strikes up and cements a relationship with a particular Landlord. In Section E of the Factual Allegations in the SAC, the VB Plaintiffs explain that there are four (4) categories of lease types that exist:

> Type 1: Ground Leases that originated with Vertical Bridge that have always been subject to confidentiality/non-disclosure provisions, including during the negotiation process;
>
> Type 2: Ground Leases that were assigned to Vertical Bridge as part of a Tower acquisition and that at all times had confidentiality/non-disclosure provisions included within them;
>
> Type 3: Ground Leases that were assigned to Vertical Bridge where originally there was no confidentiality/non-disclosure agreement but, after assignment, Vertical Bridge and the Landlord modified the Ground Lease to reflect the parties' understanding of their confidentiality/non-disclosure obligations; and
>
> Type 4: Ground Leases that were assigned to Vertical Bridge as part of a Tower acquisition that do not contain confidentiality/non-disclosure provisions.

(*Id.* ¶ 80). The VB Plaintiffs allege that the Everest Defendants have sought disclosure of information in each of the four types of leases from the Landlords, and they further allege that the Everest Defendants misappropriate their trade-secret protected information when they induce Landlords to share their contracts despite the Landlords' confidentiality obligations.

When the Court last evaluated whether the VB Plaintiffs were sufficiently secretive with the Landlords to claim they had taken reasonable measures to ensure secrecy (based on the allegations in the FAC), the Court explained that the allegations permitted loose classification of the contracts in question into three categories as far as the Court could tell at that time: (1) Type-1 arising when a VB Plaintiff purchased a pre-existing tower and, with it, acquired the lease between the Landlord and the prior owner of the tower; (2) Type-2 arising when a VB Plaintiff took a type-1 predecessor-in-interest agreement and amended it to add a confidentiality provision

if one was not already included therein; and (3) Type-3 arising in instances where a VB Plaintiff constructed its own tower and negotiated its own contract instead of inheriting one, giving the VB Plaintiff in question the opportunity to include a non-interference provision and similar protections from the beginning of the relationship with a particular Landlord. Memorandum Opinion (Docket No. 44) at 3-4. Assessing those three types of contracts at that time, the Court was skeptical that the VB Plaintiffs could adequately allege that the information in Type-1 contracts was sufficiently secretive because it seemed—according to the facts alleged—that the terms of those contracts had been shared in predecessor-in-interest contracts without any confidentiality provisions. *Id.* at 21. With respect to other contract types, the Court was "at a loss" as to why the VB Plaintiffs had not provided additional detail about, for example, confidentiality during negotiations, and the Court also expressed hesitancy to infer that the Landlords had agreed to keep certain information secret when all that was alleged was that the VB Plaintiffs had asked for secrecy. *Id.* at 20 n. 14, 21.

However, now in the SAC, the VB Plaintiffs have provided more specific allegations that satisfy the Court the VB Plaintiffs have plausibly alleged taking reasonable measures to maintain secrecy of alleged trade secrets, though not with respect to all their alleged lease types. The Court is satisfied that what the SAC identifies as Type-1 and Type-2 leases have been adequately alleged as subject to reasonable measures to maintain secrecy of site-specific rent amounts, licensing fees, escalators, and/or rent sharing information. The VB Plaintiffs represent in the SAC that Type-1 leases have been subject to confidentiality provisions during the negotiation process that were followed by confidentiality agreements in leases, and that Type-2 leases came with confidentiality provisions when they were inherited. At least at this early stage of litigation, the Court is satisfied that reasonable measures are adequately alleged and that further inquiry into the question of reasonable measures is a question of fact.

11

The Court next addresses Type 4 leases which, according to the allegations, lack confidentiality/non-disclosure provisions and have never been modified to include such provisions.  These lack adequate reasonable-measures allegations for the VB Plaintiffs to pursue trade-secret claims based on the information in those agreements.  The VB Plaintiffs argue that they can demonstrate reasonable measures—notwithstanding the lack of any agreement to secrecy—by, *inter alia*, industry practice.  But where the allegations show that—with respect to Type-4 leases—the VB Plaintiffs failed to include or add any explicit provision to leases reflecting an expectation of privacy, the Court will not find a trade secret claim has been plausibly alleged.  *See Elias Indus., Inc. v. Kissler & Co. Inc.*, No. 2:20-CV-01011-CCW, 2021 WL 2141509, at *6 (W.D. Pa. May 26, 2021) (referencing "Third Circuit precedent holding that when pricing information is already known to third parties, who have the incentive and right to disclose it, the information does not constitute a trade secret") (citing *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1257 (3d Cir. 1985)).  *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.").

That leaves Type-3 leases which are leases where it is alleged that the VB Plaintiffs were assigned a lease that lacked a confidentiality or nondisclosure agreement but worked to add one.  In the Court's estimation, it is premature to evaluate whether the VB Plaintiffs took reasonable measures to keep proprietary information secret when Landlords were, at some point, not subject to confidentiality or nondisclosure provisions, but were later subject to confidentiality and/or nondisclosure amendments to their leases.  *See Howmedica*, 2022 WL 16362464, at *18 (finding there were genuine factual disputes about whether there were protectable trade secrets where

defendants argued that there was a gap in reasonable efforts to maintain secrecy at least insofar as "surgeons" were not required "to sign non-disclosure agreements and" the plaintiff "only require[d] hospital customers to sign a non-disclosure agreement protecting pricing information 'at times'"). Accordingly, for Type-1, Type-2, and Type-3 leases, the Court finds that there are adequate allegations of reasonable secrecy measures for the VB Plaintiffs to pursue trade-secret misappropriation claims.

The Everest Defendants would challenge that determination by another argument raised in their brief, which is that the VB Plaintiffs' purported trade secrets cannot be trade-secret information because such information (rent amounts, escalators, etc.) is readily ascertainable through proper means. The Court addressed this argument briefly in its Memorandum Opinion on the FAC in footnote 15. The VB Plaintiffs argue that the Court need not address it again because the allegations that previously prompted that argument are not repeated in the SAC and the Everest Defendants cannot rely on allegations outside the operative complaint to argue for dismissal. The Court generally agrees. *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("The amended complaint supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996)). In the SAC, information about lawful tower aggregators—which, in the VB Plaintiffs' view, the Everest Defendants are not—is limited. The VB Plaintiffs allege that other "tower aggregators" pay landlords lump sums for easements or other ground interests, step into the Landlord's shoes with respect to the agreement that Landlord has in place with a tower company, and then "receive[s] the tower company's rent stream," *i.e.*, "the monthly rent payments that the company would have made to the landowner." (Docket No. 48, ¶¶ 69-70). Based on those

allegations, the Everest Defendants argue that it is reasonable to infer that tower aggregators lawfully come into possession of information about how much rent the tower company on site pays to the Landlord, that is, permissibly obtains some of the information that the VB Plaintiffs allege is a trade secret.  The Court will draw that inference, though the Court has noted before that, at this stage, it can only draw inferences in the VB Plaintiffs' favor.  *Evancho v. Fisher*, 423 F.3d 347, 350-51 (3d Cir. 2005); Memorandum Opinion (Docket No. 44) at 22 n. 15.  Inferring that lawful tower aggregators access the VB Plaintiffs' information as described above, the Court asks whether that means that the information the VB Plaintiffs seek to protect is readily ascertainable by permissible means.

As this Court has explained, "not all disclosures will destroy a trade secret."  *Nova Chemicals*, 579 F.3d at 327.  In *Nova Chemicals*, the Third Circuit gave the example of licensure of a trade secret and how such limited disclosure(s) do not destroy trade secret protection.  *Id.*  The SAC provides very little information on the disclosure of information to legitimate aggregators that contract with Landlords and—eventually—have an understanding of rent terms and possibly other information by virtue of standing between the Landlord and whichever VB Plaintiff owns and operates the tower on that property.  Considering the disclosure of information to other aggregators in the light most favorable to the VB Plaintiffs, the Court finds that at this time the Everest Defendants have not established that the VB Plaintiffs' averments show that their trade-secret information is readily ascertainable by permissible means.  As the VB Plaintiffs explained in their opposition to the motion to dismiss, a permissible inference to be drawn from the allegations surrounding legitimate aggregators is that they step into the shoes of Landlords and assume their obligations with respect to whichever VB Plaintiff has contracted with the Landlord

at that site.  (Docket No. 57 at 17-18).[3]  The Court cannot say at this juncture that such a disclosure would destroy trade-secret protection.  For that and the forgoing reasons, the Court will deny the Everest Defendants' motion in all respects except with respect to the VB Plaintiffs' claims as they relate to Type-4 leases.  The Everest Defendants' motion will be granted insofar as any of the VB Plaintiffs' trade-secret misappropriation claims depend on a Type-4 lease.

B.    Rule 12(b)(6) and the VB Plaintiffs' Remaining Claims

The last time that the Court evaluated the VB Plaintiff's other state-law claims—unjust enrichment (Count III), tortious interference with existing contractual relations (Count IV), tortious interference with prospective contractual relations (Count V), and unfair competition (Count VI)—the Court explained the legal theories underlying those claims were dependent on conclusory allegations of confidentiality in the FAC and further explained that the Court could not exercise jurisdiction over them if the VB Plaintiffs could not supply factual averments to support their federal claims under the Lanham Act or the DTSA.  Memorandum Opinion (Docket No. 44) at 23.  The Everest Defendants here argue that the Court should dismiss the state law claims again because they depend on allegations of confidentiality that are not factually supported and that rise and fall with the DTSA and PUTSA claims.  (Docket No. 54 at 18).

For reasons similar to why the Court has now determined that the VB Plaintiffs' factual averments are sufficient to support their trade-secret claims except for Type-4 leases, the Court is similarly satisfied that the VB Plaintiffs' state-law claims in Counts III to VI are adequately alleged.  To state a claim for unjust enrichment, the VB Plaintiffs must allege that a benefit was

---

[3]      At a later point in litigation, *i.e.*, at summary judgment or trial, the Everest Defendants may very well be able to show that certain disclosures of trade-secret information destroyed the secretive nature of the same such that the VB Plaintiffs lack recourse to the trade secret statutes invoked here.  Only time, discovery, and factfinding will tell.  *See Howmedica*, 2022 WL 16362464, at *17 ("Courts have found that the existence of a trade secret is a question of fact, not law.").

conferred upon the Everest Defendants and, "under the circumstances … it [would be] inequitable for" the Everest Defendants to "retain the benefit without paying" for its value. *Peterson v. Johnston & Rhodes Bluestone*, Co., No. 3:18CV2222, 2019 WL 3202166, at *2 (M.D. Pa. July 16, 2019). To that end, the VB Plaintiffs have alleged that the Everest Defendants acquired leases with confidential and proprietary financial information about rent amounts, escalators, and revenue sharing, and that conferred a competitive advantage on the Everest Defendants without their having to pay for it. (Docket No. 48, ¶¶ 205-10). Now that the VB Plaintiffs have alleged with greater specificity how the Everest Defendants acquired information that was otherwise subject to confidentiality/nondisclosure provisions (as addressed *supra*, Section III(A)), the Court is satisfied that the VB Plaintiffs have adequately alleged unjust enrichment.

For the tortious interference with existing and prospective contracts claims, the elements of such claims are:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004) (quoting *Crivelli v. General Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000)). The VB Plaintiffs have alleged existence of actual contracts (existing leases) and prospective contracts (lease renewals) with the Landlords, they have further alleged that the Everest Defendants targeted these relationships and interfered therein by inducing the Landlords to disclose confidential information, that the Everest Defendants lacked justification, and that such practices damaged the VB Plaintiffs insofar as they have lost confidentiality entitlements and suffered/continue to suffer competitive

16

disadvantage compared to Everest Defendants who are competitors in the tower company space. (Docket No. 48, ¶¶ 211-35). That is sufficient to have plausibly alleged tortious interference with existing and prospective contractual relationships. Additionally, because the VB Plaintiffs have adequately alleged tortious interference claims, the Court is also satisfied that the VB Plaintiffs' unfair competition claim is adequately alleged to survive dismissal under Rule 12(b)(6). *Tungsten Heavy Powder & Parts, Inc. v. Glob. Tungsten & Powders Corp.*, No. 4:17-CV-01948, 2018 WL 3304550, at *3 and n. 47 (M.D. Pa. July 5, 2018) ("Most pertinently here, 'Pennsylvania courts have recognized a cause of action for ... unfair competition where there is evidence of, among other things, tortious interference with contract.'" (quoting *Medical Diagnostic Laboratories, LLC v. Independence Blue Cross*, No. 16-5855, 2017 WL 3776619, at *9 (E.D. Pa. Aug. 30, 2017))). For these reasons, the Court will deny the Everest Defendants' motion to dismiss with respect to the VB Plaintiffs' claims for unjust enrichment, tortious interference with existing and prospective contracts, and unfair competition.[4]

    C.    <u>Rules 12(b)(7), Rule 19, and Joinder of the Landlords</u>

    The Everest Defendants argue that if the VB Plaintiffs' claims survive review under Rule 12(b)(6), the Court nevertheless must dismiss this case pursuant to Rule 12(b)(7) for failure to join a party under Rule 19. The Everest Defendants argue that the "core of Vertical Bridge's trade secret claim is that unidentified landlords breached their confidentiality obligations ... by disclosing lease terms to Everest" and the Everest Defendants submit that "the Court cannot issue

---

[4]    The Court notes that if the VB Plaintiffs demonstrate liability under the PUTSA, these other claims may be preempted. *See Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, No. CIV.A. 11-4568, 2011 WL 6046923, at *4 (E.D. Pa. Dec. 6, 2011) (explaining that PUTSA "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret" with certain exceptions); *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 447 (E.D. Pa. 2013). However, the preemption question is premature at this time. *Superbolt, Inc. v. Am. Indus. Bolting, Inc.*, No. CV 08-1143, 2009 WL 10690006, at *2 (W.D. Pa. Apr. 7, 2009).

a judgment against Everest absent a predicate finding that Vertical Bridge's landlords (i) owed such obligations, and (ii) breached them," a finding they say would inevitably affect the Landlords' contract and property interests.  (Docket No. 54 at 19-20).  The VB Plaintiffs argue that they—as the masters of their complaint—should not be required to join the Landlords, who they argue are not required to be joined under Rule 19.  The parties' disagreement in this regard demands the Court's assessment of whether the Landlords are required parties pursuant to Rule 19.

Rule 19 addresses the required joinder of parties, that is, it is the standard employed by courts to determine "when joinder of a particular person is compulsory."  *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1190 (3d Cir. 1996).  The goal of Rule 19—along with "the related Rules 20 (persons who may be joined as 'permissive' parties), 23 (class actions), and 24 (intervention)—is 'to achieve judicial economies of scale by resolving related issues in a single lawsuit,' while at the same time preventing 'the single lawsuit from becoming fruitlessly complex or unending.'"  *Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132, 134 (1st Cir. 1989) (quoting *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969)).  Rule 19 has "two main subparts."  *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 457 (E.D. Pa. 2013).  Rule 19(a) sets forth who must be joined, *i.e.*, which persons are required parties; Rule 19(b) addresses what must be done when a required party cannot feasibly be joined.  *Id.*  "[I]f an absent third party is not necessary under Rule 19(a), that is the end of the inquiry, and Rule 19(b) is inapplicable."  *Id.*  Subsection (a) of Rule 19 could also be said to have two main subparts.  Within Rule 19(a) "there are two main considerations if a third party is absent from the litigation and their joinder is sought: prejudice to the initial parties (*see* Fed. R. Civ. P. 19(a)(1)(A)), and prejudice to the interest of the proposed party to be joined (*see* Fed. R. Civ. P. 19(a)(1)(B)(i))."  *Banks Next friend of W.B. v. St. James Par. Sch. Bd.*, 757 F. App'x 326, 331 (5th Cir. 2018); *Janney Montgomery Scott, Inc. v.*

*Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993). That is, Rule 19(a)(1)(A) addresses persons without whom complete relief might not be possible,[5] and Rule 19(a)(1)(B) addresses persons that claim an interest in the action. The Everest Defendants' argument for mandatory joinder of the Landlords is premised on the latter consideration in Rule 19(a)(1)(B)(i).

Applying Rule 19(a)(1)(B)(i) in this case, the Court observes that an initial problem in applying the rule to the absent Landlords is that the rule conceives of an absent party *who claims* an interest in the litigation, Fed. R. Civ. P. 19(a)(1)(B)(i); *see Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 233 (3d Cir. 2023), but the Landlords have done no such thing. Some courts have decided that for Rule 19(a)(1)(B)(i) to apply, an interested person must take the initiative by claiming an interest in a particular case. *ConnTech Dev. Co. v. Univ. of Connecticut Educ. Properties, Inc.*, 102 F.3d 677, 682 (2d Cir. 1996) ("[B]ecause it does not claim 'an interest relating to the subject of the action,' Connecticut [the absent person] is not required to be joined under either prong of Rule 19(a)(2)."). But courts have also approved of acting sua sponte to protect interests of absent parties. *Epsilon Energy*, 80 F.4th at 233 n. 13 (quoting Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment). The plain language of Rule 19(a)(1)(B)(i)—that a person required to be joined is one who "claims an interest"—gives this Court serious pause in considering the Everest Defendants' arguments on the absent Landlords' behalf under the Rule. However, out of an abundance of caution, the Court will herein evaluate their arguments under Rule 12(b)(7) and Rule 19 as though the Landlords are persons who have asserted their interest in this case.

---

[5] Under Rule 19(a)(1)(A), a person must be joined if, "in that person's absence, the court cannot accord complete relief among existing parties," the person is subject to service, and their joinder "will not deprive the court of subject matter jurisdiction." "A Rule 19(a)(1)[(A)] inquiry is limited to whether the district court can grant complete relief to the persons already parties to the action. The effect a decision may have on the absent party is *not material*." *Janney,* 11 F.3d at 405 (emphasis added).

Thus, the Court addresses the question of whether the Landlords are the type of persons covered by Rule 19(a)(1)(B)(i), *i.e.*, persons with an interest relating to the subject of this action who are situated in such a way that "disposing of the action in [their] absence may ... as a practical matter impair or impede [their] ability to protect the interest."  The Everest Defendants argue that the Landlords' interests in the contracts they are alleged to have breached and their interest in the properties underlying their VB Contracts could be impaired by this case if the Court decides in the Landlords' absence that the Landlords are obligated to keep the terms of their VB Contracts confidential.  The Everest Defendants argue that such a ruling would shrink the Landlords' pool of prospective buyers, as well as the offers made by such buyers.  For support the Everest Defendants cite cases such as *Glades Pharms., LLC v. Call, Inc*., No. CIV.A. 04-4259, 2005 WL 563726 (E.D. Pa. Mar. 9, 2005); *Lessel, Winkle, Yard, Inc. v. Advanced Telecomm. Network, Inc*., No. CIV. A. 94-1096, 1994 WL 263322, at *1 (E.D. Pa. June 10, 1994); *Spice Jazz LLC v. Youngevity Int'l, Inc*., No. 19-CV-583-BAS-WVG, 2019 WL 4573705 (S.D. Cal. Sept. 19, 2019); and *Hearing Lab Tech., Inc. v. Hearing Instruments, Inc.*, No. CV 16-221, 2017 WL 3208676, at *1 (W.D. Pa. July 27, 2017).  The VB Plaintiffs argue those cases are distinguishable, and they further argue that their case is more like *Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871 (7th Cir. 2004), wherein the Seventh Circuit determined that the district court abused its discretion when it dismissed a case under Rule 19.  *Id.* at 874.  This Court agrees that *Salton* is relevant enough to summarize herein.

In *Salton*, E & E was a manufacturer of Defendant Philips's single-serving coffeemaker and, as manufacturer, E & E received proprietary information from Philips.  *Id.*  At some point, Plaintiff Salton also hired E & E to manufacture *its* single-serving coffeemaker.  *Id.* at 875.  When Philips and Salton later became adversaries in court over this single-serving coffeemaker, the

Seventh Circuit decided that where "Salton … procured E & E's breach of the confidentiality provisions in its contract with Philips and thus caused the revelation of Philips's trade secrets by committing an independent tort," E & E was a joint tortfeasor, not a required party. *Id.* The court went on to explain that Philips was not required to join "another alleged tortfeasor." *Id.* This was the case even though, to prove Salton's misappropriation, Philips would "have to show that E & E broke its contract with Philips by revealing Philips's trade secrets to Salton without authorization." *Id.* at 880. Explaining why that was the case, the Seventh Circuit stated: "there is no rule that you cannot sue the interferer without also suing the party to your contract whom the defendant inveigled into breaking the contract." *Id.*[6] *Salton* and other cases, *see e.g.*, *Pujol*, 877 F.2d at 137, thus show that Rule 19 does not override permissive joinder of joint tortfeasors.

Applying that principle here counsels against finding that the Landlords are required parties. The Landlords' VB Contracts are relevant to whether the VB Plaintiffs protected certain information enough to call it trade secret, but the contract interest in this case is not so direct as it has been in other cases where there is an absent signatory to a contract and rights under such contract will be determined in the case. *Epsilon*, 80 F.4th at 233 ("As the District Court explained, parties owning rights under disputed contracts, like the Absent JOA Parties, generally have a legally protected interest under Rule 19(a)(1)(B)(i).").

Another case that is helpful to understanding why the Landlords need not be joined under Rule 19(a)(1)(B)(i) is the Third Circuit's discussion in *Janney*. In *Janney* the Third Circuit

---

[6]     The First Circuit has consistently observed that the "mere fact … that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party." *Pujol*, 877 F.2d at 136. *But see Glades Pharms.,* 2005 WL 563726, at *3 (deciding that an absent co-conspirator was a necessary party where a decision in the plaintiff's favor would "be based on the legal conclusion that [the absent party] misappropriated [the plaintiff's] property, infringed on [the plaintiff's] copyrighted material, and diverted [the plaintiff's] business opportunities").

considered *Marra v. Burgdorf Realtors, Inc.*, 726 F. Supp. 1000 (E.D. Pa.1989) and, using that case, explained that where an absent party was the putative owner of property and the case was "likely to determine title to the property," the absent party ought to be part of the litigation to defend its interest in the property. *Janney*, 11 F.3d at 407. The Third Circuit distinguished the case before it in *Janney* from *Marra*. In *Janney*, the district court had dismissed Plaintiff Janney's breach of contract action against Defendant Shepard Niles for nonjoinder of Shepard Niles's parent corporation, Underwood. *Id.* at 401. Janney was an investment banking corporation in Pennsylvania and Shepard Niles was a corporation in New York. *Id.* Janney and Underwood had entered an investment banking agreement whereby Janney would serve as advisor to Underwood and Shepard Niles and would assist Shepard Niles with "private placement financing to refinance [its] debt obligations." *Id.* Underwood's agreement with Janney stated that Janney would be the "exclusive investment banking advisor for … Underwood … *and subsidiaries*," but at some point Underwood procured another entity to find private placement financing for Shepard Niles. *Id.* Once that other entity found private placement financing, Janney sued Shepard Niles for its contingent fee based on the advice and support it had provided to Underwood and Shepard Niles, and Janney also sued Underwood, Shepard Niles, and two other subsidiaries in the state court. *Id.* at 403. Before the district court, Shepard Niles moved for a judgment on the pleadings for failure to join Underwood as an indispensable party. *Id.* The district court determined that Underwood was a necessary party because a decision in Janney's suit against Shepard Niles would have collateral estoppel effect against Shepard Niles or be "persuasive precedent against Underwood" in the state court proceedings. *Id.* at 404.

The Third Circuit determined, to the contrary, that Underwood was not a necessary party because the fact that "persuasive precedent" could result from proceedings in Underwood's

absence that would affect Underwood elsewhere was not sufficient to justify mandatory joinder. *Id.* at 407. The Third Circuit explained that Underwood's interests were too speculative to warrant joinder. *Id.* The Third Circuit went on to explain that if "preclusion or collateral estoppel could be invoked against Underwood in other litigation," that could make Underwood a necessary party, but that "mere presentation of an argument that issue preclusion is possible is not enough to trigger Rule 19(a)(2)(i)." *Id.*[7] Instead, Underwood would have to show "that some outcome of the federal case that is reasonably likely can preclude the absent party with respect to an issue material to the absent party's rights or duties under standard principles governing the effect of prior judgments." *Id.* at 409; *Huber v. Taylor*, 532 F.3d 237, 251 (3d Cir. 2008) ("That issue preclusion is possible, however, is not enough to trigger a Rule 19(a)(2)(i) finding."). *But see Glades*, 2005 WL 563726, at *3 ("Murphy's legal right to use certain information and to market certain products in competition with Glades is a central issue in this action" and "Murphy's interests will be adversely affected if Glades prevails in this litigation because a favorable decision must be based on the legal conclusion that Murphy misappropriated Glades' property[.]").[8]

The Everest Defendants' arguments that the Landlords' interests require joinder under Rule 19(a)(1)(B)(i) at this time are vague, and they have not provided arguments about preclusion or estoppel that are nonspeculative enough to trigger mandatory joinder under Rule 19(a)(1)(B)(i). Based on *Janney* and related cases, it is the Court's decision in this matter that the Landlords are

---

[7]     Rule 19(a)(2)(i) is now expressed in Rule 19(a)(1)(B)(i). *Jones v. Bethel Park Sch. Dist.*, No. CV 19-708, 2019 WL 7372049, at *3 (W.D. Pa. Dec. 31, 2019).

[8]     *Lessel*, on which the Everest Defendants rely, is distinguishable. In that matter, the plaintiff sued the defendant Advanced Telecommunication Network for money owed under an asset purchase agreement, and the agreement was between the plaintiff, defendant, and the plaintiff's shareholders. 1994 WL 263322, at *1. The court in that case determined that the shareholders were necessary parties because they "were active participants to the agreement" at issue and had "an interest in maintaining the validity and enforceability of the" agreement. *Id.* at *3. The Court has reviewed the other cases cited by the Everest Defendants but finds them either not persuasive or not applicable in this matter.

not necessary parties pursuant to Rule 19(a)(1)(B)(i).  The Court is not convinced otherwise by the arguments presented and cases cited by the Everest Defendants.[9]

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant in part and deny in part the Everest Defendants' pending motion to dismiss.  The Everest Defendants' motion to dismiss is denied to the extent that it is pursued under Rule 12(b)(7).  The Everest Defendants' motion pursuant to Rule 12(b)(6) is denied in all respects except as to those claims of trade secret misappropriation that are based on underlying contracts that have never included confidentiality and/or nondisclosure provisions (Type-4 leases).  In that respect, dismissal is with prejudice, the VB Plaintiffs having had multiple opportunities to amend such that further amendment would be futile.  An Order consistent with this Memorandum Opinion follows.

<u>/s/ W. Scott Hardy</u>
W. Scott Hardy
United States District Judge

Dated:    February 20, 2025

cc/ecf:    All counsel of record

---

[9]    The Everest Defendants do not appear to argue that joinder of the Landlords is required under Rule 19(a)(1)(B)(ii) but, even if they had, it does not appear to the Court that there is any risk that the parties to the case will be at risk of multiple liability if the Landlords are not joined; therefore, Rule 19(a)(1)(B)(ii) is not applicable. *Graco, Inc. v. PMC Glob., Inc.*, No. CIV. A. 08-1304FLW, 2009 WL 904010, at *11 (D.N.J. Mar. 31, 2009) ("However, this misconstrues Rule 19(a)(1)(B)(ii), which considers the risk to the 'existing parties' of 'incurring double, multiple, or otherwise inconsistent obligations because of the absent person's interest', not the risk to the absent party.").